953 So.2d 659 (2007)
DEPARTMENT OF CHILDREN AND FAMILIES, Appellant,
v.
J.J.E., Father of J.E., A Child, Appellee.
No. 5D06-1797.
District Court of Appeal of Florida, Fifth District.
March 30, 2007.
*660 Ralph J. McMurphy, of Department of Children and Families, Wildwood, for Appellant.
Gary R. Gossett, Jr., and Christopher D. Cloud, of Gossett Law Offices, P.A., Sebring, for Appellee.
MONACO, J.
The Department of Children and Families appeals the order of the trial court finding that the service of process by publication in which the Department sought to obtain jurisdiction over the appellee, the father of the child that was the subject of a termination of parental rights proceeding, was invalid, and that the subsequent order terminating the father's rights was void. Because we find no abuse of discretion, we affirm.
In 2002, the father's parental rights to his child, J.E., were terminated based upon service of process by publication. The order terminating the father's rights indicated that the father's location was unknown and that he could not be found. J.E. was placed in a foster home along with his half-sister. Two years later the father learned through the media that J.E.'s half-sister had been abused. The father became concerned with the welfare of his son and filed a petition for writ of habeas corpus. His petition, which was assigned to a judge not involved in the *661 original proceeding, alleged that J.E. was being wrongfully restrained in the custody of the Department because jurisdiction had never been obtained over the father. When the court, considering the petition, determined that it had subject matter jurisdiction, the Department sought a writ of prohibition from this court. We granted the petition and ordered the trial court either to dismiss the father's petition for habeas corpus or "to transfer the proceedings to the court that ordered the termination of parental rights which continues to have jurisdiction over J.E." See Dep't of Children & Families v. J.J.E, 901 So.2d 215, 217 (Fla. 5th DCA), review denied, 911 So.2d 98 (Fla.2005). We directed that the issue of whether jurisdiction had been obtained over the father be considered by the dependency court employing the procedure found in Florida Rules of Juvenile Procedure 8.270(b)(4), which governs relief from an order or judgment because the order or judgment is void. Cf., Paladin Props. v. Family Inv. Enters., 952 So.2d 560 (Fla. 2d DCA 2007).
In accordance with that order the case was transferred to the dependency court, which then proceeded to hold an evidentiary hearing to consider whether process had been properly served in the original proceeding so that personal jurisdiction had been obtained over the father. More specifically, the trial court set out to determine whether the Department had performed the statutorily required diligent search prior to using publication as a means to serve process on and gain jurisdiction over the father.
Procedural due process requires "that a defendant in a termination proceeding will be given fair notice and afforded a real opportunity to be heard and defend in an orderly procedure." M.J.W. v. Dep't of Children & Families, 825 So.2d 1038, 1040 (Fla. 1st DCA 2002). Section 39.801, Florida Statutes (2006), and Florida Rules of Juvenile Procedure 8.505 govern the procedure for giving notice and serving process with respect to a petition to terminate parental rights. Section 39.801(3)(a)1. and rule 8.505(a)(1) provide that before a court can terminate parental rights, notice must be personally served on any parent who is the subject of the termination. If a party to a proceeding for termination of parental rights is known but his or her whereabouts are not, section 39.803(5) Florida Statues (2006), requires a court to direct the petitioner to conduct a diligent search to locate the party, unless it would be in the best interest of the child to proceed without actual notice. If a party entitled to personal service cannot be so served, section 39.801(3)(b) thereafter compels notice to be given as required by the rules of civil procedure. Accordingly, when personal service cannot be made on an affected parent, service by publication may be made on any known party for proceedings to terminate parental rights. Sections 49.011(13), 49.021(1), Florida Statutes (2006); rule 8.505(c). If constructive service is utilized, however, there must be strict statutory compliance. See, e.g., Shepheard v. Deutsche Bank Trust Co. Americas, 922 So.2d 340, 344 (Fla. 5th DCA 2006); Floyd v. Fed. Nat'l Mortg. Ass'n, 704 So.2d 1110, 1112 (Fla. 5th DCA 1998).
As a prerequisite to service of process by publication, the party seeking to obtain service must file a sworn statement with the court demonstrating that a diligent search has been made in an effort to obtain the defendant's residence and establishing that personal service could not be obtained. Section 49.031(1) Florida Statutes (2006); Floyd. The sworn statement must show that a diligent search has been conducted to discover the name and address of the person sought to be served, whether the person sought is over 18, and *662 that the person's address is unknown or known, and if known, is included in the affidavit. Section 49.041, Florida Statutes (2006). Section 39.803(6), Florida Statutes (2006), lists the minimum requirements for a diligent search:
The diligent search required by subsection (5) must include, at a minimum, inquiries of all known relatives of the parent or prospective parent, inquiries of all offices of program areas of the department likely to have information about the parent or prospective parent, inquiries of other state and federal agencies likely to have information about the parent or prospective parent, inquiries of appropriate utility and postal providers, and inquiries of appropriate law enforcement agencies.
Even though the affidavit must allege that a diligent search and inquiry was made, it does not have to include specific supporting facts. Floyd, 704 So.2d at 1112. This provision, nevertheless, does not relieve the party of establishing that a diligent search has actually been made:
The underlying facts, however, must show that the complainant reasonably employed the knowledge at his command, made diligent inquiry and exerted an honest and conscientious effort appropriate to the circumstance to acquire the information necessary to enable him to effect personal service of the defendant.
Id. (internal citations omitted); see also Shepheard. Failure to comply strictly with the constructive service statutes renders a subsequent judgment voidable or even void if service of process is so defective that it essentially amounts to no service. Floyd, 704 So.2d at 1112.
In the present case, the trial court found that the Department represented in the earlier proceeding that it had performed a diligent search for and was unable to locate the father. It thereafter served process by publication in a local newspaper. The evidence received revealed that the Department had contacted the mother of J.E., whose rights were also being terminated, and were told by her that she had no knowledge of the father's location. The Department stated in documentation brought to the trial court's attention that "the mother had reasons for not being forthcoming as to her knowledge of the Father's whereabouts." The record does seem to indicate that the Department's personnel did at least check the phone book and drivers' license records, but because the father had a common name, it went no further. It did not bother to seek to learn which of the seven persons with similar names was the father whose parental rights it sought to terminate. Because it was not given a social security number or the birth date of the father, the Department considered itself unable to search further, and argued that its inquiry, meager as it was, satisfied the requirements of diligent search. It did not try to contact any other governmental agencies and did not check the county public records because, according to the Department's witness, "it would have been a waste of time."
The evidence further revealed, however, that the Department of Revenue (Child Support Office), was located in the very same building that housed the Department, yet incredibly no one from the Department ever consulted this agency, even though the Department of Revenue had issued an Order Suspending Child Support Payments that contained the father's correct mailing address. The Clerk of the Circuit Court testified, as well, that a motion to suspend the father's child support payments was filed in the public records of that court. The Clerk likewise had records showing that child support payments *663 were being received. In fact, the Clerk had a letter from the father with his address on it.
The trial court found it "unfathomable" that a more diligent search was not performed, and noted that "throwing up one's hand due to a common name and a lack of detail when the outcome involves the termination of parental rights . . . strains the conscience." The trial court found that the dependency court never obtained jurisdiction over the father prior to terminating his parental rights because no diligent search had been completed. Having found that the termination order was void, the trial court then gave the Department leave to give proper notice to the father and to commence a new termination proceeding against him. The Department appeals.
This case is largely controlled by our recent decision in J.M. v. Dep't of Children & Families, 938 So.2d 620 (Fla. 5th DCA 2006). Here, as in J.M., the Department failed to demonstrate that it conducted a diligent search and inquiry. The burden of demonstrating that constructive service was proper fell squarely on the shoulders of the Department. See J.M.; Shepheard. The trial court found that the Department did not come close to the mark. Inasmuch as we review such a determination on an abuse of discretion basis, we find no error. See Snipes v. Chase Manhattan Mortg. Corp., 885 So.2d 899, 900 (Fla. 5th DCA 2004), review dismissed, 902 So.2d 792 (Fla.2005). We write only to reconfirm that because parental rights are a fundamental liberty interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, termination of those rights may not be accomplished in a perfunctory fashion. See In re K.M., 946 So.2d 1214 (Fla. 2d DCA 2006). The Constitution requires and we fully expect those seeking to terminate parental rights to comply rigorously with the applicable laws, including very importantly the laws governing service of process.
AFFIRMED.
PALMER, J., concurs.
TORPY, J., concurs and concurs specially, with opinion.
TORPY, J., concurring and concurring specially with opinion.
When Appellee's parental rights were terminated without notice to him in 2002, J.E. was 13 years old. In a few months, J.E. will turn 18 years old. We don't know whether Appellee's parental rights should have been terminated because Appellee has never had the chance to defend himself. For almost three years, Appellee has battled for that right against a recalcitrant Department of Children and Families, which has interposed a pointless procedural hurdle and frivolous defenses. In the meantime, a child remains in legal limbo.
Central to this dispute was a disagreement between two department employees regarding their respective responsibilities. The case worker testified that it was "not part of [her] responsibility" to search for Appellee. Instead, she relied upon another department employee, a "crime intelligence analyst," to perform the "diligent" search. The crime intelligence analyst testified that, according to department procedure, it was the case worker's responsibility to provide him with enough specifics, including a social security number and date of birth, to enable him to perform the diligent search for Appellee. When she only provided him with Appellee's full name, the analyst essentially threw up his hands. The analyst spoke with a "senior" attorney for the department concerning his perceived dilemma. According to him, the attorney told him in an e-mail that she would try to get more *664 information from the mother's attorney, failing which, she said: "otherwise, I don't know. Do the best you can." Although he had been given a checklist to meet the minimum requirements for a diligent search, as set forth in section 39.803(6), Florida Statutes (2006), the analyst did not complete it. Instead, he made the unilateral determination that any such efforts would prove fruitless or, as he put it, a "waste of my time." It is unclear why the attorney did not tell the analyst to follow the checklist. Maybe she assumed that he had.
Apparently, the analyst determined that merely searching the driver's license records and phone book was "the best [he could]" do. Although the driver's license search revealed seven persons within Florida with the same name as Appellee's, the analyst made no further attempt to narrow the list of names, concluding that the list of seven was too voluminous. Despite his lack of diligence, the analyst signed a sworn statement claiming that he had made a "diligent search and inquiry to determine the residence" of Appellee. The senior attorney for the department then filed the sworn statement in the court file.
During a status proceeding, the senior attorney presented a copy of the analyst's sworn statement to the trial judge to get the judge's "permission" to serve Appellee by publication, although it was not necessary for the judge to give permission. See §§ 49.011(13) & 49.021(1), Fla. Stat. (2006); Fla. R. JUV. P. 8.505(c). When the attorney showed the document to the judge, her only comment to the judge was that "[t]here was very scanty information, because we don't have much on the [Appellee]." At no time did anyone from the department advise the trial judge that, notwithstanding the sworn statement to the contrary, the department had not complied with the provisions of section 39.803(6), Florida Statutes (2006).
Section 39.803(6) provides a laundry list of what is minimally necessary to establish a diligent search. Following its dictates is not rocket science, but the law is clear that strict compliance with the statute is imperative. Had the department simply done what the statute required, nothing more, nothing less, it would have found Appellee in Sebring, Florida, served him with process and this matter would have been concluded long ago on the merits. Instead, it is at its procedural genesis.
At least as troubling as the department's meager efforts at effectuating a diligent search is the manner by which the department has reacted to what should have been an obvious revelation that it had erred. Instead of admitting the mistake and taking action to expedite the resolution of this case on the merits, it has confounded the dilemma by interposing a perplexing procedural objection and frivolous litigation, which has further delayed these proceedings for almost three years.
The department's first avenue of defense was to challenge the procedural mechanism Appellee first used to contest the department's actions. What was gained through that process is hard to fathom. What was lost is clear: one more year without any resolution on the merits. Thereafter, despite the fact that Appellee availed himself of the procedural route specified by this Court for him to take, the department interposed a frivolous challenge to the authority of the juvenile judge to hear Appellee's motion, advanced wholly frivolous arguments and filed a specious appeal from the adverse ruling. This time, the department's actions resulted in another delay of well over one and one-half years.
Incredible as it seems, never has the department contended that it complied *665 with the requirements of section 39.803(6). Instead, it advanced as its primary contention below and on appeal that the trial judge, Judge Tombrink, did not have authority to hear Appellee's rule 8.270(b)(4) motion because he is the successor judge to the judge who granted the department's petition to terminate the parental rights of Appellee. As successor judge, the department contends, Judge Tombrink erred by "overturn[ing] the findings of [the predecessor judge] that the evidence was sufficient to find that a diligent search had been conducted."[1] Although this argument is simply too nonsensical to merit discussion, which is probably why it is not addressed by the majority, because I have labeled it frivolous, I will offer some comment on the fallacy of the argument.
The predecessor judge did not make any "findings" that the "evidence" was sufficient. In fact, he made no "findings" and he heard no "evidence." What he did do was authorize the department to proceed with service by publication based upon a cursory review of a conclusory affidavit. Because the department was permitted by law to file a conclusory affidavit without disclosing the details of its so-called diligent search, the trial court's function in reviewing the affidavit was ministerial at best.[2] This did not constitute a determination that the department did in fact do a diligent search as the burden remains with the proponent of the affidavit, upon challenge, to affirmatively show that it did perform a diligent search. Floyd v. Fed. Nat'l Mortg. Ass'n, 704 So.2d 1110, 1112 (Fla. 5th DCA 1998).
Furthermore, the judgment of the predecessor judge was void, because the court did not have personal jurisdiction over Appellee, and rule 8.270 provides the procedural route for relief from any such judgment. Nothing in the rule or decisional law cited by the department requires that a collateral attack upon a void judgment be presented to the judge who signed the judgment. In fact, the law is exactly to the contrary. Tingle v. Dade County Bd. of County Comm'rs, 245 So.2d 76, 77-78 (Fla.1971); Powers v. ITT Fin. Servs. Corp., 662 So.2d 1343, 1345 (Fla. 5th DCA 1995); Batista v. Batista, 553 So.2d 1281, 1282 (Fla. 3d DCA 1989).
When the department seeks to terminate parental rights, its obligation to diligently search for the parents to give them proper notice of the proceedings is paramount. Due process of law should never be disregarded in favor of expediency, especially when fundamental rights are at stake. The purpose of the diligent search requirement is to find the parent so that actual service can be accomplished. It is not merely a technical precondition to substitute service. Service by publication is intended to be a last resort. The statute enumerates what should be done as a minimum. In addition, the department is obligated to use the "knowledge at [its] command, [make] diligent inquiry, and [exert] an honest and conscientious effort appropriate to the circumstance to acquire the information necessary to enable [it] to effect personal service." Demars v. Village of Sandalwood Lakes Homeowners Ass'n, Inc., 625 So.2d 1219, 1224 (Fla. 4th DCA 1993) (quoting Canzoniero v. Canzoniero, *666 305 So.2d 801, 803 (Fla. 4th DCA 1975)). Here, the department's efforts were obviously woefully lacking.
To make matters worse, the department, in an apparent attempt to pass the buck to the trial judge, sought unnecessary permission from the court to use substitute service of process, but did so by filing a false affidavit, without disclosing to the trial court facts within its knowledge that were clearly material to the determination. An affidavit of diligent search is given under penalty of perjury and constitutes an affirmative representation to the court that the department has complied with the mandatory, statutory provisions and due process of law. The department's actions in failing to provide complete information to the trial court during an ex parte proceeding were a gross transgression from its ethical and legal obligations.
Thereafter, the department's lawyers engaged in unnecessary and frivolous litigation to defend a position that was utterly indefensible. Lawyers are duty bound to expedite litigation and to refrain from interposing frivolous claims or defenses. R. Regulating Fla. Bar. 4-3.1 & 4-3.2. Here, the department's lawyers violated these principles and, in the process, perpetuated a grievous violation of Appellee's constitutional rights with potentially devastating personal consequences to Appellee and his child. I, for one, expect a more enlightened approach from lawyers, especially those entrusted with the responsibility of representing the government in these types of proceedings.
NOTES
[1] [Quoted from the department's brief on appeal; emphasis supplied].
[2] Although decisional law apparently permits the practice of filing an affidavit that merely tracks the language of the statute in conclusory language, I think this practice is incorrect because section 49.041, Florida Statutes (2006) requires that the affidavit "show" that a "diligent search and inquiry have been made." In my view, to constitute a "showing" an affiant must set forth facts from which the trial court can verify that the search has been diligent.