8 So.3d 372 (2009)
J.H., Appellant,
v.
K.D.M. and E.N.M., Appellees.
No. 5D07-3688.
District Court of Appeal of Florida, Fifth District.
February 3, 2009.
Edward P. Jordan, II, of Edward P. Jordan, II, P.A., Minneola, for Appellant.
Patricia L. Strowbridge, of Patricia L. Strowbridge, P.A., Orlando, for Appellees.
SAWAYA, J.
The issue we address is whether a putative father, who properly registers pursuant to section 63.054, Florida Statutes (2004), but fails to subsequently update his registration after he changed residences, necessarily waives the consent requirement of section 63.062(1), Florida Statutes (2004), and his right to notice of adoption and termination of parental rights proceedings when the petitioner has actual or constructive knowledge of the whereabouts of the putative father.[1] We answer in the negative and reverse the final judgment, which terminates the parental rights of J.H., the putative father of A.N.M., and grants the petition for adoption filed by the child's maternal grandparents, K.D.M. and E.N.M.
The mother, T.B., and J.H. were involved in an intimate romantic relationship beginning in July 2002 and ending sometime in January 2004. After J.H. learned that the mother was with child, he registered as a putative father on July 29, 2004, pursuant to section 63.054. In completing the putative father registry, J.H. provided all of the required information, including his full name and physical description, the mother's full name and physical description, *373 and the believed date of conception. J.H. listed his address and wrote his cell phone number in the space provided for an alternate mailing address. He subsequently moved but did not update his registration with a new address.
On August 25, 2004, the mother gave birth to A.N.M. Approximately five days later, the maternal grandmother and stepgrandfather filed a petition to adopt the child that contained a request that the biological parents' rights to the child be terminated. The mother consented to the adoption and to the termination of her parental rights, and in her affidavit in support of required inquiry, diligent search, and abandonment, she averred that the biological father of the child was unknown. The grandparents filed a notice of putative father registry claim in September 2004 that reflected that J.H. had previously registered. In October 2004, an affidavit of non-service as to J.H. was filed in the adoption case, and on November 2, 2004, the grandparents filed a certificate of updated diligent search of the putative father registry. The information in J.H.'s putative father registration, which was attached to the certificate, had not been updated to reflect a new address. Although J.H. did not update his registry address, he did file a petition to determine paternity on October 28, 2004, in a separate proceeding.
Nevertheless, on December 15, 2004, the trial judge entered a final judgment granting the grandparents' petition for adoption and terminating the mother and putative father's parental rights, ruling that although service of the petition for adoption on J.H. was attempted at the address provided by J.H. in his putative father registration, service was not accomplished because J.H. had relocated his address without updating the address on his registration. No mention was made in the ruling of the fact that J.H. had listed a telephone number in the space provided for an alternate address. Instead, the trial judge emphasized that "[p]ursuant to Florida Statute 63.054(6), it is the responsibility of the Registrant to update his address with the Florida Putative Registry, and failure to do so is at his own risk."
A flurry of motions were filed in the adoption and paternity actions by J.H., the mother, and the grandparents. It is not necessary to list them all here. Suffice it to say that on August 31, 2006, J.H. properly filed a petition for habeas corpus in an independent action that was assigned to a different trial judge. In that petition, he asserted that he was not given proper notice of the adoption and termination proceedings and he requested a belated appeal of the December 15, 2004, order granting the adoption and terminating his parental rights. An evidentiary hearing was held on the petition. After hearing all of the testimony and considering all of the evidence presented, the trial court granted the petition in an order dated October 9, 2007, which included extensive findings of fact that clearly reveal that the grandparents and the mother had actual or constructive knowledge of the whereabouts of J.H. In that order, the trial court concluded:
Although [J.H.] failed to update the Florida Putative Father Registry with his new address, the Court finds that his lack of notice of the December 15, 2004, order terminating his parental rights is a valid defense because the [maternal grandparents, K.D.M. and E.N.M.,] had constructive knowledge of his address and whereabouts from another source. Specifically, the [grandparents] had actual or constructive knowledge of [J.H.'s] address and whereabouts through [K.D.M.'s] direct communications *374 with [J.H.] during the time of the adoption and termination of parental rights proceeding. In addition, [T.B.] told [K.D.M.] that [J.H.] could be the father of the minor child. [T.B.] knew [J.H.'s] mother was building a new house and had been to the construction site.
The finding in the last sentence is of significance because the trial court in the habeas proceedings found that on October 2, 2004, J.H. moved from the address listed in his putative father registration to the new house to live with his mother.
This court subsequently affirmed the October 9, 2007, order in K.D.M. v. J.H., 985 So.2d 548 (Fla. 5th DCA 2008). Thus, this is a belated direct appeal of the trial court's December 15, 2004, order terminating the parental rights of J.H. and granting the maternal grandparents' petition for adoption. J.H. contends that the final judgment terminating his parental rights and granting the grandparents' petition for adoption must be reversed because he was not notified of the proceedings, and he did not consent to the termination or adoption.
Section 63.054, Florida Statutes, establishes the Florida Putative Father Registry (hereinafter "Registry") and requires an unmarried biological father to timely file a claim of paternity with the Registry in order to preserve the right to notice and consent to an adoption. See § 63.054, Fla. Stat. (2004); see also Heart of Adoptions, Inc. v. J.A., 963 So.2d 189, 196 (Fla.2007). Section 63.062 contains additional requirements the putative father must meet in order to preserve the necessity of his consent to the adoption. Section 63.062 applies where, as in the instant case, grounds for termination of parental rights have not been established.[2] If the putative father complies with section 63.062, "a petition to terminate parental rights pending adoption may be granted only if written consent has been executed as provided in s. 63.082 after the birth of the minor or notice has been served under s. 63.088...." § 63.062(1), Fla. Stat. (2004).
In order to preserve the necessity of his consent, J.H. was required to comply with section 63.062(2)(b), which provides:
With regard to a child who is younger than 6 months of age at the time the child is placed with the adoptive parents, an unmarried biological father must have demonstrated a full commitment to his parental responsibility by having performed all of the following acts prior to the time the mother executes her consent for adoption:
1. Filed a notarized claim of paternity form with the Florida Putative Father Registry within the Office of Vital Statistics of the Department of Health, which form shall be maintained in the confidential registry established for that purpose and shall be considered filed when the notice is entered in the registry of notices from unmarried biological fathers.
2. Upon service of a notice of an intended adoption plan or a petition for termination of parental rights pending adoption, executed and filed an affidavit in that proceeding stating that he is *375 personally fully able and willing to take responsibility for the child, setting forth his plans for care of the child, and agreeing to a court order of child support and a contribution to the payment of living and medical expenses incurred for the mother's pregnancy and the child's birth in accordance with his ability to pay.
3. If he had knowledge of the pregnancy, paid a fair and reasonable amount of the expenses incurred in connection with the mother's pregnancy and the child's birth, in accordance with his financial ability and when not prevented from doing so by the birth mother or person or authorized agency having lawful custody of the child.
§ 63.062(2)(b), Fla. Stat. (2004).
Significantly, section 63.062(6) provides that the party petitioning for adoption "must make good faith and diligent efforts as provided under s. 63.088 to notify, and obtain written consent from, the persons required to consent to adoption under this section." § 63.062(6), Fla. Stat. (2004). Similarly, section 63.054(13) states:
The filing of a claim of paternity with the Florida Putative Father Registry does not excuse or waive the obligation of a petitioner to comply with the requirements for conducting a diligent search and inquiry with respect to the identity of an unmarried biological father or legal father which are set forth in this chapter.
§ 63.054(13), Fla. Stat. (2004).
It is undisputed that J.H. timely filed his claim of paternity with the Registry in July 2004, prior to the child's birth in August 2004. The trial court in the adoption and termination proceedings did not consider whether J.H. was in compliance with section 63.062(2)(b) because he determined that J.H.'s failure to update his address with the Registry conclusively established that he was not entitled to notice and that his consent was not necessary. Apparently for the same reason, the trial court also did not consider whether the grandparents had made a diligent search for J.H. in accordance with section 63.054(13) or whether they had made good faith and diligent efforts to obtain written consent from J.H. pursuant to section 63.062(6). This was error.
Although the trial court correctly observed that section 63.054(6) requires the putative father "to notify and update the Office of Vital Statistics of any change of address" and that the failure "to report any such change is at the registrant's own risk and shall not serve as a valid defense based upon lack of notice," the provision concludes with an exception that the court did not consider. § 63.054(6), Fla. Stat. (2004). Specifically, section 63.054(6) states that the failure of a putative father to update his address "shall not serve as a valid defense based upon lack of notice, unless the person petitioning for termination of parental rights or adoption has actual or constructive notice of the registrant's address and whereabouts from another source." Id. (emphasis added). Therefore, the trial judge in the adoption and termination proceedings erroneously concluded that notice and consent were not required based solely on J.H.'s failure to update his Registry address when the grandparents had actual or constructive notice of J.H.'s new address and whereabouts and failed to make a good faith, diligent effort to notify J.H. of the proceedings or obtain his consent to the adoption or the termination of his parental rights.
The conclusion we reach is supported by the relevant case law. In M.C. v. A.H., 745 So.2d 396 (Fla. 4th DCA 1999), review denied, 760 So.2d 945 (Fla.2000), for example, the court held that "[p]arties petitioning *376 for adoption must reasonably employ the knowledge available to them so that, if possible, a parent whose consent is necessary will have actual notice of the suit." Id. at 397. There, the court reversed a final order denying relief from a final judgment of adoption where the record conclusively demonstrated that the parties petitioning for adoption did not exercise due diligence in attempting service of process on the child's natural father. See also Dep't of Children & Families v. J.J.E., 953 So.2d 659 (Fla. 5th DCA 2007); J.M. v. Dep't of Children & Families, 938 So.2d 620 (Fla. 5th DCA 2006) (reversing denial of motion to set aside default judgment terminating mother's parental rights and remanding for further proceedings where constructive service of process was improper due to Department's failure to conduct a diligent search in an effort to effect actual service); M.E. v. N.P.S., 804 So.2d 548 (Fla. 2d DCA 2002) (holding that trial court lacked authority to enter judgment of adoption because service of process by publication was improper where the underlying facts did not show due diligence was used in attempting personal service).
Accordingly, we vacate the final judgment granting the adoption and terminating the parental rights of J.H. and remand for further proceedings.
REVERSED and REMANDED.
PALMER, C.J. and ORFINGER, J., concur.
NOTES
[1] Other issues were raised, which include whether the statute of repose applies and whether J.H. was required to show support for the minor child or the birth mother in accordance with sections 63.062(2)(b)2. and 3., Florida Statutes (2004), as a condition precedent to notice of the adoption and termination proceedings when the maternal grandparents and the mother allegedly prevented him from providing support. We do not address these issues because they are matters to be resolved by the trial court on remand.
[2] The grounds for termination of parental rights pending adoption are contained in section 63.089(3), Florida Statutes. A trial court's determination that there are grounds for termination must be made by clear and convincing evidence, supported by written findings of fact. § 63.089(3), Fla. Stat. (2004). Here, the trial court in the adoption and termination proceedings did not determine whether there were grounds for terminating J.H.'s parental rights. Instead, the court determined that J.H.'s failure to update his Registry address conclusively established that he was not entitled to notice and that his consent was not required.