WELLS, Chief Judge.
Sunbeam Television Corporation appeals from a final judgment awarding damages on a discrimination claim in favor of Marilyn A. Mitzel, a reporter whose contract Sunbeam opted to terminate. We conclude that the trial court erred when, years into the litigation, it permitted Mit-zel to change the theory of her case from one of strictly age discrimination, as reflected in her charge to the FCHR and EEOC[1] and in her complaint, to an unpled claim of age-plus-sex discrimination and allowed a trial to proceed on this unpled theory. For that reason, we reverse.
Mitzel was hired at age thirty-five by Sunbeam as a reporter for WSVN-TV (Channel 7) in late 1988. She initially *867 contracted for a two year term as a “medical reporter,” but over a period of years, executed a series of additional, two or three year contracts.[2] On February 11, 2005, when Mitzel was fifty-one years old, the parties executed their final employment contract. In this and each of the parties’ contracts, Sunbeam reserved the sole right to schedule and assign programming.
Early that same year, Alice Jacobs, Channel 7’s Vice President of News and the head of Sunbeam’s news operations had informed Mitzel that she wanted to change the format of the medical news that Mitzel was reporting. Jacobs, with over twenty-one years experience in the newsroom at Sunbeam and with complete control over news programming at Channel 7, had become increasingly convinced since 9/11 that viewers had become more interested in stories related to international news, terrorism, and politics, and Jacobs had decided to move away from the standard medical reports that Mitzel was presenting in favor of more current, breaking medical news stories. At her direction, a number of Mitzel’s standard reports, including “Health Cast” and “Doc Talk,” were cut back or entirely eliminated, and Mitzel was told to concentrate on breaking medical news. By December of that year, 2005, Jacobs decided to take the station in a different direction and to eliminate the medical reporter position altogether. Jacobs advised Robert Leider, the Executive Vice President of Sunbeam and General Manager of Channel 7, of her decision, who in turn discussed it with Edward An-sin, the owner of the station. Both agreed with her decision, and on December 13, 2005, Leider advised Mitzel that Sunbeam was discontinuing her contract, because it was “going in a different direction with medical news.” The next day, Sunbeam notified Mitzel in writing that it was exercising its option not to renew her contract.
Mitzel subsequently requested additional compensation and benefits, a waiver of her contract’s non-compete provision, and written confirmation that she was “not fired for any reason but that [her] segment was eliminated.” At no point did Mitzel ask to stay on at the station in another capacity. Sunbeam paid all sums due, released Mitzel from her contract’s non-compete obligation and acknowledged in writing that “WSVN-TV is eliminating the position of Health Specialist.” Sunbeam thereafter cut its medical news reporting by more than half, reducing that coverage from.every day, to two or three times a week, with reports being read by news anchors and lasting only ninety seconds out of a thirty minute newscast. Sunbeam also reduced the support personnel for medical news.
On May 24, 2006, Mitzel filed a Charge of Discrimination form with the FCHR and the EEOC claiming a violation of the Florida Civil Rights Act (“FCRA”).[3] See § 760.10, Fla. Stat. (2006). This charging *868 document form called for Mitzel to “check the appropriate box” for the “cause of discrimination,” listing “race,” “color,” “sex,” “religion,” “national origin,” “age,” “retaliation,” and “other (specify),” as the basis for a discrimination claim. Mitzel, who was represented by an attorney, checked only the “age” box as the basis of her discrimination claim, leaving the “race,” “color,” “sex,” “religion,” “national origin,” “retaliation,” and “other,” boxes blank. In the “Particulars” portion of the charging document, Mitzel made no mention of sex discrimination, claiming only that she was discriminated against on the basis of her age:
I am a 52 year old woman who has worked as a broadcast journalist for Sunbeam Television Corp. (WSVN-TV) for approximately 17 years. I was, until my termination, one of very few of the more than 30 broadcast journalist [sic] there who is 50 or older. I was terminated with two years remaining on my current contract, being given no reason other than the station was “changing directions” in its healthcare reporting, which was the area that I covered. I previously had served as the station’s primary backup anchorperson, sitting in as a news anchor four of five times a month. Once I turned 50, however, I was never asked to serve as an anchor; instead, the station used persons who were substantially younger than I.
When the Charge was not resolved by the EEOC, Mitzel filed a one count complaint under the Florida Civil Rights Act of 1992, alleging solely age discrimination:
1. This is a[sic] age-discrimination action brought pursuant [to] the Florida Civil Rights Act of 1992 by Marilyn A. Mitzel, a 53-year-old woman whom Sunbeam Television Corp. fired as Channel 7’s healthcare reporter even though two years remained on her contract....
[[Image here]]
4. Marilyn A. Mitzel (“Mitzel”) is a 53-year-old woman who worked as a broadcast journalist for Sunbeam Television Corp. (WSVN-TV) for approximately 17 years. She is protected by the age-discrimination provision of the Florida Civil Rights Act of 1992, §§ 760.01, et seq., Fla. Stat. (2007).
[[Image here]]
6. Section 760.10(l)(a), Fla. Stat. (2003), provides in pertinent part:
(1) It is an unlawful employment practice for an employer:
(a) To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual’s ... age ...
[[Image here]]
8. Mitzel was in December 2005 one of the very few of the more than 30 broadcast journalists employed by Sunbeam Television Corp. at Miami’s Channel 7, WSVN-TV, who was 50 year[s] old or older.
9. Additionally, Mitzel previously had served as the station’s primary back-up anchorperson, sitting in as a news anchor four or five times a month.
10. Once Mitzel turned 50, however, Sunbean [sic] never again asked her to serve as an anchor: instead, the station used persons who were substantially younger than Mitzel.
[[Image here]]
13. Sunbeam offered Mitzel no reason for terminating her other than the station was “changing directions” in its health-care reporting [.]
14. Sunbeam’s termination of Mit-zel was based on Mitzel’s age, and constituted discrimination as envisioned *869 and proscribed by § 760.10(l)(a), Fla. Stat. (2007).
[[Image here]]
(Emphasis added).
Sunbeam answered that it had legitimate reasons for its actions and that any claim exceeding the scope of the administrative charge was impermissible and time-barred. For almost the next four years this case proceeded solely as an age discrimination case. During a pretrial deposition taken on March 4, 2008, Mitzel reconfirmed that her action was based solely on a claim of age discrimination and was founded on two, and only two, actions: (1) Channel 7’s failure in 2004 to allow her to continue to serve as back-up anchor after she turned fifty and (2) her termination without cause:
Q. The complaint also alleges at paragraph 12 that — well, actually 14 it says that Sunbeam terminated you because of your age. Is that claim, the termination claim and the claim that you’re no longer serving as the anchor are those the only claims of age discrimination you’re asserting in the lawsuit?
[[Image here]]
Q. Are those the only instances of age discrimination?
A. Being terminated.
Q. And no longer serving as back-up anchor?
A. Yes.
At no point in this deposition, or otherwise up to this point, did Mitzel state or suggest that her claim was also premised on a claim of sex discrimination.[4]
Mitzel also acknowledged that, other than her perceptions, she had no facts to support her claim. Rather, Mitzel deduced that she was the victim of age discrimination because she was doing a good job and could “think of no other reason” for the termination:
Q. When did you decide or think that the station’s terminating your employment constituted age discrimination?
A. Immediately.
Q. When Mr. Leider told you?
A. Pretty much.
Q. Why did you think that?
A. I don’t know any other reason.
[[Image here]]
Q.... Now, my question is why do you contend that [the] station terminated your employment because of your age; evidence, facts, what evidence or facts leads you to conclude that your termination—
A. I can think of no other reason.
[[Image here]]
Q. Do you have any knowledge whether actual knowledge or hearsay or based on rumor that anyone at the station terminated you because of your age?
A. Did I hear management say that, no.
Q. Did you hear it or did you hear second hand that anyone in management said or made the decision to terminate you because of your age?
A. No.
In contrast, Alice Jacobs testified at deposition, and Robert Leider confirmed, that Jacobs had sole control over the day-to-day operations of Channel 7’s newsroom. She made all personnel decisions *870 and decided what would be on Channel 7⅛ newscasts and who would do it. According to Jacobs, she engaged no focus groups, took no surveys, and reviewed no ratings in making her decisions as to how to present the news; she relied on her over twenty years experience at Channel 7 to decide what news to present and how. With regard to the changes made to the presentation of medical news, Jacobs testified that after 9/11 she perceived that interest in medical news was dwindling. She decided to change the focus of the Channel’s medical reportage to breaking news rather than its standard packaged medical reporting. In keeping with this decision, medical news was gradually decreased with regular reports declining from eight reports a week to two, and because breaking news does not happen all the time, she decided that the Channel no longer needed a medical reporter.
Jacobs further testified that although Mitzel had done some anchoring for the station in the past, she found Mitzel ill suited for such duty. Jacobs found Mitzel was “not very good” at ad-libbing breaking news and thought she looked uncomfortable doing it. Thus, when the time came to eliminate the medical reporter position, Jacobs decided to terminate Mitzel rather than move her to another reporting position. Leider and Ansin approved of her decision.
After two-and-one-half years of discovery, in December 2009, Sunbeam moved for summary judgment. Based on the pleadings and discovery taken, Sunbeam claimed entitlement to a judgment as a matter of law on Mitzel’s age discrimination claim, the only claim asserted up to that point. The company argued first, following Sunbeam’s purported “reduced use” discrimination relating to its refusal to use Mitzel as a back-up anchor, that Mitzel had failed to file a Charge of Discrimination with the FCHR within 365 days of the alleged discrimination as required by section 760.11(1) of the Florida Statutes; and second, that Mitzel could not satisfy the burdens imposed by McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), or demonstrate that “but for” her age, her employment would not have been terminated, the standard set out in Gross v. FBL Financial Services, Inc., 557 U.S. 167, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009).[5]
At this point, with Sunbeam’s motion for summary judgment pending and the heavy evidentiary burden so recently set out in Gross on age discrimination cases looming over Mitzel’s single-count age discrimination claim, this action underwent a complete transformation from an age discrimination only action to an age plus sex discrimination action, an action which might allow Mitzel to muddy the waters, by reference to the Title VII standard for recovery, where a claim of discrimination can be advanced on a plaintiffs claim that being an older woman was “a motivating factor” for her employer’s action. See Gross, 129 S.Ct. at 2349 (confirming that “Congress has ... amended Title VII by explicitly authorizing discrimination claims in which an improper consideration was ‘a motivating factor’ for an adverse employment action. See 42 U.S.C. § 2000e-2m (providing that ‘an unlawful employment practice is established when the complain *871 ing party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice’ (emphasis added))”).
Two months after the motion for summary judgment was filed, Mitzel for the first time identified an expert witness, Sherlynn Howard-Byrd, Ph.D., an associate professor and Chair of the Department of Mass Communications at Alcorn State University in Alcorn, Mississippi. Mitzel also filed a declaration, prepared by Mit-zel’s attorney and signed by Dr. Howard-Byrd, in which Dr. Howard-Byrd admitted that she could not “testify that Sunbeam Television Corp.’s termination of Marilyn Mitzel was age discriminatory.” Despite the fact that this admittedly first time expert witness could shed no light on the only issue raised by the pleadings in this case, she declared under oath:
While I cannot testify that Sunbeam Television Corp.’s termination of Marilyn Mitzel was age discriminatory, it is my opinion that:
One, Channel 7’s staffing patterns are identical to the widespread industry practice of basing decisions concerning the retention of older journalists, especially older women journalists, on consumer preference (be it documented or perceived) for “sweet young things” rather than seasoned professionals;
Two, Alice Jacobs’s “professional judgment” is without any objective support and would appear to be both jour-nalistically counter-intuitive and financially self-destructive;
Three, the truth of Ms. Jacobs’s assertion that she reduced the number of medical stories is called into question by both Ms. Mitzel’s testimony that she continued to be on the air regularly with medical news, notwithstanding the elimination of specially named, sponsored segments such as “HealthCast” and “Doc Talk,” as well as the volume of medical stories I found on WSVN’s web site — both of which are consistent with my understanding of the popularity of medical news amongst broadcast news consumers; and
Fourth, I could find no objective justification for not continuing to employ Ms. Mitzel, an experienced broadcast journalist with anchoring capabilities, in some other role under the rather broad terms of her contract.
These opinions were, as Dr. Howard-Byrd’s deposition confirmed, based on nothing more than anecdotal evidence, hearsay, and rank speculation. Indeed, Dr. Howard-Byrd conducted no studies and undertook no investigation that would permit her to determine what Channel 7’s staffing patterns were or whether they were consistent with any recognized industry standards. She also conceded that while in her opinion age discrimination in broadcast news begins at age forty, Channel 7 employed at least seven broadcast journalists over that age, four of whom (not including Mitzel) are female, including one a number of years older than Mitzel. She further admitted that her conclusion that there exists “a widespread industry practice of basing decisions concerning the retention of older journalists, especially older women journalists, on consumer preference (be it documented or perceived) for ‘sweet young things’ rather than seasoned professionals,” was premised on no statistics whatsoever, since admittedly none exists, but was premised on nothing more than “flipping through the [T.V.] channels and seeing things”;4 conversations with her students at Alcorn State University; a study about the number of women, not the ages of women, in broadcast journalism; review of a few age discrimination lawsuits involving women jour *872 nalists; and surveys that found that the airline industry at one point preferred thin, young women as stewardesses.
Dr. Howard-Byrd’s second opinion, that Alice Jacobs’ decision to change the delivery of medical news was without objective support, was derived in significant part from her review of Neilsen ratings from which she concluded that Mitzel’s medical reports were viewer favorites. However these ratings were based on fifteen minute news segments during which Mitzel’s medical news ran for no more than two minutes. Dr. Howard-Byrd, however, attributed an uptick in ratings solely to Mitzel’s reports, irrespective of the other reports presented by other newscasters during these segments. Moreover, this conclusion was reached’ without Dr. Howard-Byrd having watched the full fifteen minute newscasts that were the subject of the reports.
Dr. Howard-Byrd’s conclusion that Jacobs was not being truthful when she said she wanted to reduce, and then reduced, the number of medical reports is based on Dr. Howard-Byrd’s conclusion that the number of such reports had not been reduced and indeed would not have been reduced because they were “popular” with viewers. First, Dr. Howard-Byrd had to admit that she had no idea how many medical reports were aired weekly either before or after Mitzel’s position was terminated. Indeed, she had viewed only two medical reports and was unaware that standard, non-breaking, medical news reports had been reduced between 2003 and 2006 from eight a week to only two. Second, as for her conclusion that such reports were popular with viewers, according to Dr. Howard-Byrd, she knew this because she had seen such reports “everywhere,” and “popular wisdom is that health news is and always will be big news.”[6]
Dr. Howard-Byrd’s final conclusion that she “could find no objective justification for not continuing to employ Ms. Mitzel,” not only ignores Jacobs testimony that Mitzel was unsuited for breaking news reporting but also fails to acknowledge the oft cited admonishment that bad business decisions do not necessarily correlate with decisions that violate the law. See Reilly v. Novartis Pharm. Corp., No. 6:07-cv-230-CM-19GKJ, 2008 WL 795322, at *10 (M.D.Fla. Mar. 24, 2008) (citing Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir.2000) (en banc)); see also Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1361 (11th Cir.1999) (“We have repeatedly and emphatically held that a defendant may terminate an employee for a good or bad reason without violating federal law.... We are not in the business of adjudging whether employment decisions are prudent or fair.”); Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir.1991) (“Federal courts do not sit as a super-personnel department that reexamines an entity’s business decisions. No matter how medieval a firm’s practices, no matter how high-handed its decisional process, no matter how mistaken the firm’s managers, [federal discrimination law] does not interfere. Rather our inquiry is limited to whether the employer gave an honest explanation of its behavior.”).
In conjunction with Dr. Howard-Byrd’s April 7, 2010 declaration, and just before the scheduled summary judgment hearing, *873 Mitzel submitted an affidavit for the first time asserting that women broadcasters had a “shelf life,” that plastic surgery was expected of women in the industry, and that she was a victim of discrimination because she was a woman over fifty. Mit-zel also pointed to two statements purportedly made by Jacobs to support her newly asserted “women” over 50 discrimination claim. The first stemmed from a discussion that occurred in 2001, four years before she was terminated, and before she executed her last employment contract with Channel 7. This discussion was, according to Mitzel, prompted by Mitzel herself, when she voiced her anxiety that she might someday be let go because of her age, to which Jacobs allegedly responded, “Oh, I know what you’re worried about— you don’t have to worry about that. You can work here a long time. At least five years.” The second stemmed from a comment by Jacobs about a medical story featuring a breast cancer patient in her sixties, which Jacobs had pulled, saying “No one wants to look at old ugly people on T_v.” [7]
Sunbeam promptly moved in limine to preclude any testimony regarding Mitzel’s new allegation of sex discrimination or age-plus-sex discrimination, including that of her newly identified expert. On April 9, 2010, the trial court denied Sunbeam’s summary judgment motion, as well as its motions to exclude Mitzel’s sex discrimination allegations and her expert’s testimony. Following a five day trial centered around Mitzel’s age-plus-sex theory, a jury returned a verdict finding that age was “a substantial or motivating factor that prompted” Sunbeam to terminate Mitzel, and awarded her $790,000 for past lost wages and benefits, $97,000 for future wages and benefits, and $50,000 for punitive damages. After denying Defendant’s Amended Motion for Judgment in Accordance with the Prior Motion for Directed Verdict or, in the Alternative, Motion for a New Trial, the trial court entered judgment in Mitzel’s favor.
Sunbeam advances a number of arguments for reversal of this judgment, including the argument that this plaintiff should not have been permitted to proceed on a new theory that went beyond anything either claimed in her FCHR/EEOC Charge or advanced in her complaint. Because we agree with this argument, we reverse and remand for reconsideration of this case solely on the issue of age discrimination.
The Florida Civil Rights Act of 1992 (FCRA), prohibits discrimination in the workplace because of an individual’s race, color, sex, national origin, age, handicap, or marital status. See § 760.10, et. seq., Fla. Stat. (2007); Brown Distrib. Co. of W. Palm Beach, 890 So.2d at 1230 n. 1; see also Hogan, 986 So.2d at 641. Under its provisions, an individual claiming discrimination in the workplace must first file an administrative complaint with the FCHR within 365 days of an alleged viola *874 tion and exhaust the administrative remedies provided by the Act before a civil action asserting discrimination may be brought. See § 760.11, Fla. Stat. (2010); Woodham v. Blue Cross & Blue Shield of Fla., Inc., 829 So.2d 891, 894 (Fla.2002).
The purpose of these requirements is to notify the employer of discriminatory practices and to provide the FCHR with “the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts.” See Gregory v. Ga. Dept. of Human Res., 355 F.3d 1277, 1279 (11th Cir.2004); Buzzi v. Gomez, 62 F.Supp.2d 1344, 1351 (S.D.Fla.1999).
These purposes are, of course, frustrated when a claimant asserts one set of claims in the administrative proceedings but attempts to assert another set of unrelated claims in a subsequent civil action. See Gregory, 355 F.3d at 1280. Thus, while “judicial claims are allowed if they ‘amplify, clarify, or more clearly focus’ the allegations in the [administrative] complaint, ... allegations of new acts of discrimination are inappropriate.” Id. at 1279-80 (quoting Wu v. Thomas, 863 F.2d 1543, 1548 (11th Cir.1989)); see Gaston v. Home Depot USA, 129 F.Supp.2d 1355, 1365 (S.D.Fla.2001) (“Absent some allegation of fact [in the administrative proceeding] that put the defendant on notice of the nature and scope of the claim against it, the plaintiff is barred from asserting other types of claims in subsequent judicial proceedings that may bear some connection, however distinct, to the bare claim asserted in the [administrative] charge.”).
In this case, Mitzel’s administrative charge of discrimination and the claim of discrimination made in her complaint are the same: both allege discrimination based solely on age. But the claim that Mitzel was allowed to go to the jury on was completely different. See Evans v. Techs. App. & Serv. Co., 80 F.3d 954, 963 (4th Cir.1996) (confirming that “age discrimination does not necessarily flow from sex discrimination and vice versa”); Arnett v. Aspin, 846 F.Supp. 1234, 1240-41 (E.D.Pa.1994) (confirming that age and sex discrimination are not the same thing); see also Cartee v. Wilbur Smith Assocs., Inc., No. 3:08-4132-JFA-PJG, 2010 WL 1052082, at *3 (D.S.C. Mar. 22, 2010). While Mitzel’s administrative claim nowhere suggests that older female journalists are treated differently from older male journalists or even that younger female journalists were treated more favorably than she, her new claim focuses on the differences in treatment between men and women over the same age. This new claim, raised on the eve of summary judgment and trial, does not in any manner “amplify, clarify, or more clearly focus” the age discrimination claim made in her Charging Document, was therefore administratively barred, and should not have been allowed to go to the jury below.[8]
*875 Mitzel also should not have been allowed to proceed on a claim that had not been pled in her complaint. “[Ljitigants at the outset of a suit must be compelled to state their pleadings with sufficient particularity for a defense to be prepared.” Arky, Freed, Steams, Watson, Greer, Weaver & Harris, P.A. v. Bowmar Instrument Corp., 537 So.2d 561, 563 (Fla.1988). Thus, when a plaintiff pleads one claim but tries to prove another, it is error for a trial court to allow the plaintiffs to argue the unpled issue at trial. Agrofollajes, S.A. v. E.I. Du Pont De Nemours & Co., 48 So.3d 976, 995 (Fla. 3d DCA 2010); Bloom v. Dorta-Duque, 743 So.2d 1202, 1203 (Fla. 3d DCA 1999) (stating that “[i]t is well settled that a defendant cannot be found liable under a theory that was not specifically pled”); see also Cioffe v. Morris, 676 F.2d 539, 543 n. 8 (11th Cir.1982) (confirming that unplead issues tried without consent deny due process). In this case, Mit-zel alleged a pure age discrimination claim yet was allowed to try not just an age but also a sex discrimination claim. This in itself requires reversal. See Robbins v. Newhall, 692 So.2d 947 (Fla. 3d DCA 1997) (reversing final judgment where plaintiff had alleged three specific acts of negligence, but tried the ease on a fourth alleged act that was never pled); Freshwater v. Vetter, 511 So.2d 1114, 1115 (Fla. 2d DCA 1987) (“A judgment upon a matter entirely outside the issues made by the pleadings cannot stand, and such a judgment is voidable on appeal.”).
We also find reversible error in allowing Mitzel, via Dr. Howard-Byrd’s testimony, to try an entire industry, the broadcast news industry, for age and sex discrimination rather than trying the issues raised in her pleadings — that is, whether Sunbeam engaged in age discrimination against her when it eliminated her position. At the hearing on Sunbeam’s motion in limine, its counsel unsuccessfully sought to exclude Dr. Howard-Byrd’s testimony because, among other reasons, it was not relevant to the issues raised by the pleadings[9]; it was generic to age discrimination in the broadcast news industry as a whole; and it would not assist the trier of fact.[10] As previously stated, Dr. Howard-Byrd expressly admitted that she could not opine as to any discrimination at Channel 7, the only issue relevant here. Her deposition further confirmed that her *876 testimony as a whole was no more than an unsupported running theory that age discrimination against women is pervasive within the broadcast news industry:
Question: What part of your testimony will help the jury understand the evidence?
Answer: The research that I have done about various cases and case studies. All I have to offer is my expert opinion about the research I have done.
[Question]: And you have done no research or studies on Channel 7 in Miami ever, correct? Other than reviewing the website and looking at the depositions. So you are going to say that some TV stations historically have discriminated against older women in this country, correct?
[Answer]: Yes. The ones that I have researched, yes.
[Question]: What does that have to do with Sunbeam Television Channel 7?
[Answer]: Mitzel’s case may parallel with some of the other cases where people have alleged age discrimination. That’s the information I can offer. That discrimination does happen. It does occur.
I believe that society still has in mind what happened [ ... ] during the World War II era. I really believe that they still look at the woman as maybe a figure that is not as authoritative as the man [ ... ] Men are more likely to continue reporting past the age of 40, more so than the women because the women would start to age more. And, [ ... ] once the men age gracefully it is considered authoritative and experienced by not for women ... The older woman is often considered too old, too unattractive, and not deferential enough to men.
As Rowe Entertainment, Inc., v. The William Morris Agency, Inc., No. 98 Civ. 8272(RPP), 2003 WL 22272587, at *1 (S.D.N.Y. Oct. 2, 2003), confirms, this type of generic evidence is not necessarily probative of a discrete discrimination claim. There, four black promoter agencies sued white booking agency defendants alleging a conspiracy to exclude the plaintiffs from promoting concerts on the basis of race. The plaintiffs retained an expert who conducted research of “Institutional Racism in the Entertainment Industry.” That expert opined that statistical data on the concert promotion sector showed an institutionalized pattern of racial discrimination. The expert further opined that accounts and incidents recounted by a number of black promoters were similar to accounts and incidents described by the other African Americans in the Concert Promotion Business, all of which purportedly established racial discrimination. The district court excluded this testimony of industry discrimination as irrelevant and prejudicial stating that “the conclusion by [Plaintiffs expert] of institutionalized discrimination in the United States concert promotion industry is not relevant to the issues in Plaintiffs case and would only serve ‘to interject substantial unfair prejudice into the case’ and confuse the jury by directing its attention from the issues in this case.” Id. at *7; see also Rolls-Royce Corp. v. Herns, Inc., No. 3:07-CV-0739-D, 2010 WL 184313, at *6 (N.D.Tex. Jan. 14, 2010) (“An opinion is unhelpful to a trier of fact if it attempts to apply a general observation about a larger group to particular individuals whose conduct is in question.”). The same may be said here. The fact that a handful of broadcast stations may have engaged in improper employment actions based on age does not prove that this is what happened here.
*877 In sum, Dr. Howard-Byrd’s testimony reached beyond the scope of this case to come to conclusions she was not competent to reach,[11] and served only to interject irrelevant conjecture into the jury’s consideration, all to Sunbeam’s prejudice. This pervasive discussion of a generalized distaste for older woman in the news industry by this expert unfairly suggested Mitzel’s termination was caused by the same kind of discrimination, and certainly diverted the jury from its task of deciding whether Mitzel’s age was the “but for” cause of her contract being terminated in this case. This was wholly improper and so prejudicial as to warrant reversal and a new trial.
For these reasons, the order under review is reversed with this matter remanded to the court below for consideration of Mitzel’s claim of age discrimination.

. The Florida Commission on Human Relations ("FCHR”) and the Equal Employment Opportunities Commission (“EEOC”).

. In 1994, Sunbeam removed from Mitzel’s contract the term "medical reporter.”

. FCRA protects employees from age discrimination in the workplace. It provides, in pertinent part, that it is unlawful for an employer to discriminate against any individual "because of’’ such individual's age. § 760.10(l)(a), Fla. Stat. (2010) (emphasis added). This Act was derived from two federal statutes, Title VII of the Civil Rights Acts of 1964 and 1991, 42 U.S.C. § 2000, et seq., as well as the ADEA, 29 U.S.C. § 623. See Brown Distrib. Co. of W. Palm Beach v. Marcell, 890 So.2d 1227, 1230 n. 1 (Fla. 4th DCA 2005). Title VII pertains to employment discrimination because of race, color, religion, sex and national origin, while the ADEA pertains to age discrimination. Florida courts apply federal case law interpreting Title VII and the ADEA to cases arising under the FCRA. See Id.; City of Hollywood v. Hogan, 986 So.2d 634, 641 (Fla. 4th DCA 2008).

. As to her back-up anchor claim, Mitzel testified at deposition that although she viewed the fact that after she turned fifty in 2004 she was no longer called on to act as back-up anchor as “age discrimination,” she complained to no one about it; suffered no financial or other ramifications as a consequence of it; and subsequently entered into another employment contract with the station in early 2005.

. Gross, 129 S.Ct. at 2352 provides:
We hold that a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the "but-for” cause of the challenged adverse employment action. The burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision....

. To support this proposition, Dr. Howard-Byrd asked the court below to ''[cjonsider, for example, the counterpoint of the emphasis that Cable News Network puts on the role of its chief medical correspondent, Sanjay Gupta, M.D.” This perhaps makes a point but also highlights the fact that medical updates now appear to be delivered by physicians such as Dr. Gupta and not lay people such as Mitzel.

. The United States Court of Appeal for the Eleventh Circuit "has been hesitant to conclude that 'ambiguous stray remarks' constitute evidence of pretext.” Reilly, 2008 WL 795322 at *10 n. 19; see also Koestner v. Derby Cellular Prods., 518 F.Supp.2d 397, 402 (D.Conn.2007) ("In determining whether a comment is a probative statement that evidences an intent to discriminate or whether it is a non-probative 'stray remark,’ a court should consider the following factors: (1) who made the remark, i.e., a decisionmaker, a supervisor, or a low-level co-worker; (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark, i.e., whether a reasonable juror could view the remark as discriminatory; and (4) the context in which the remark was made, i.e., whether it was related to the deci-sionmaking process.” (quoting Schreiber v. Worldco, LLC, 324 F.Supp.2d 512, 518-19 (S.D.N.Y.2004))).

. The court in Freese v. Wuesthoff Health System, Inc., No. 6:06-cv-175-Orl-31JGG, 2006 WL 1382111, at *4 (M.D.Fla. May 19, 2006), rejected a similar attempt to assert a gender discrimination claim following an administrative proceeding in which only age discrimination and retaliation were raised. There, Freese checked the boxes on her Charge of Discrimination indicating discrimination based on “age” and “retaliation,” and described the misconduct involved in the Particulars section of the Charge as follows:
1) Age-at the time these events took place, I was Sixty-Two (62) years of age.
Retaliation-I believe I have been retaliated against by management at Wuesthoff because I complained about workplace conditions ....
Id. at *4.
She later filed a civil action wherein she attempted to claim discrimination based on *875 her gender. The court rejected the new claim concluding that it did not serve to "amplify, clarify, or more clearly focus” the allegations of age discrimination and retaliation made in the administrative complaint:
Nowhere in her charge does [Freese] make any allegations or statements that could, even when construed entirely in her favor, even be considered hints, much less actual allegations, of gender discrimination and retaliation. Her allegations of gender discrimination and retaliation in her Second Amended Complaint are entirely new and different allegations than those found in her Employment Charge of Discrimination. Therefore, Freese has failed to meet the jurisdictional prerequisite for the filing of Title VII and FCRA gender discrimination and retaliation claims, and those claims will be dismissed.
Id. at *4.

. As a threshold matter, the expert’s opinion must be relevant, that is, the evidence must prove or tend to prove a fact in issue. Stano v. State, 473 So.2d 1282, 1285 (Fla. 1985).

. Section 90.702, Florida Statutes (2010), provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or in determining a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify about it in the form of an opinion; however, the opinion is admissible only if it can be applied to evidence at trial.

. See Lubkey v. Compuvac Sys., Inc., 857 So.2d 966, 968 (Fla. 2d DCA 2003) (finding that in attorney's fee hearing, "[t]he expert’s opinion, lacking any factual foundation, was not competent proof”); Dozier v. Hodges, 849 So.2d 1094, 1095 (Fla. 3d DCA 2003) (finding it was proper to exclude officer's estimate of speed even though the expert had been qualified as an expert because he had testified in his deposition that “he took no measurements, made no calculations, and no factual basis for his opinion”); Young-Chin v. City of Homestead, 597 So.2d 879, 882 (Fla. 3d DCA 1992) ("It has always been the rule that an expert opinion is inadmissible where it is apparent that the opinion is based on insufficient data.” Husky Indus., Inc. v. Black, 434 So.2d 988, 992 (Fla. 4th DCA 1983); Martin v. Story, 97 So.2d 343 (Fla. 2d DCA 1957) (opinion based on incomplete information is not admissible). Section 90.705 Florida Statutes (1989), states that if a “party establishes prima facie evidence that the expert does not have a sufficient basis for his opinion, the opinions and inferences of the expert are inadmissible unless the party offering the testimony establishes the underlying facts or data.”).