STEVENSON, J.
The City of West Palm Beach appeals a final judgment in the amount of $230,000 after a jury found' that discrimination and/or retaliation occurred within the West Palm Beach Police Department (the “Department”) against the appellee, William H. McCray. By way of cross-appeal, McCray challenges the trial court’s order granting the City’s motion for a new trial on damages only. The City contends: (1) that McCray failed to present a prima facie case of disparate treatment, discrimination or retaliation; (2) that improper verdict forms were used; (3) that irrelevant evidence was admitted; and (4) that the jury verdict is excessive and contrary to the weight of the evidence, requiring a new trial on liability as well. McCray argues that the amount awarded by the jury is supported by evidence in the record. McCray’s claim is based on the purported inclusion of his claim for termination at trial. We hold that the evidence was sufficient to support the jury’s finding of discrimination and/or retaliation and that the trial court was correct in ordering a new trial on damages because the termination claim was not an issue for the jury. The additional claims raised by the parties are without merit.
McCray, an African American, filed a complaint alleging disparate treatment, discrimination and retaliation against the City. McCray alleged discrimination under the Florida Civil Rights Act based on the Department disciplining him more harshly than white employees and for denying him promotions, assignments and transfer opportunities that were provided to white employees. McCray also alleged retaliation under the Florida Civil Rights Act for the Department failing to promote him, failing to give him desirable assignments and subjecting him to disparate discipline, working conditions and biased internal af *168 fairs investigations, which ultimately resulted in his termination. McCray alleged that these acts occurred after he filed two charges of discrimination with the Equal Employment Opportunity Commission (“EEOC”) and the Florida Commission on Human Relations (“FCHR”).
The City and McCray each filed motions in limine. As a result, the trial judge who was assigned the case at that time excluded from trial the issue of McCray’s termination, reasoning that it had not been included in the charges of discrimination, which was a prerequisite to filing suit. Subsequently, the parties entered into a joint pretrial stipulation. The parties agreed that McCray was terminated from his job on May 9, 2001, after he filed two charges of discrimination with the EEOC and FCHR on April 26, 1999, and July 7, 1999. McCray’s issues for the jury were, in relevant part:
• whether the Department discriminated against McCray because of his race;
• whether the Department treated non-African American employees more favorably than McCray for “substantially similar conduct and circumstances”; and
• whether the Department retaliated against McCray for making discrimination complaints.
The City’s issues for the jury included whether McCray presented a prima facie case of discrimination or retaliation based on the following disciplinary actions:
a. One-day suspension (8 hours) on August 25, 1998, for missing court for the third time in twelve months;
b. Suspension for five days (40 hours) on March 8, 1999, for. sleeping on duty and failing to maintain control of a prisoner;
c. One-day suspension (8 hours) on May 19, 1999, for improper investigation and inaccurate/false information in police reports;
d. Four-day suspension (32 hours) o[n] December 18, 1999, for failure to appear for depositions and being late for court resulting in a misdemeanor plea in a felony case; [and]
e. Two-day suspension (16 hours) for failure to properly secure a prisoner while in processing area at headquarters on January 14, 2000.
Prior to the beginning of trial, the new trial judge who had been assigned the case indicated that the issues would be limited by the pretrial stipulation, as well as by the ruling made by the initial trial judge. The trial court reiterated that whether McCray was wrongfully terminated was not an issue for the jury.
At trial, McCray testified that, in 1997, he began generating letters about discrimination within the Department. McCray sent letters up the entire chain of command, from Sergeant to Chief, as well as to several City Hall officials and the May- or. He spoke personally with his supervisors and, in 2001, spoke with the media after his letter-writing efforts had been ignored. McCray testified that he was accused of lying during disciplinary investigations and punished harshly, whereas other white officers, actually caught lying or admitted to lying, received very light punishments. McCray felt that the five suspensions at issue were specific examples of discrimination. For example, regarding the suspension for not maintaining control of a prisoner on January 14, 2000, McCray indicated that it occurred because he stepped away from the prisoner for thirty seconds to use the bathroom and left the prisoner in a locked facility. McCray knew that other officers had done the same thing without it being “a problem.” McCray also felt that he was discriminated against during the investigation into the *169 incident of him falling asleep while watching a prisoner on March 8, 1999, because two white officers lied under oath about the events. According to McCray, though a video recording showed that the officers had lied, the officers who made the false statements were not punished. McCray further testified about several examples of officers violating Department policy and receiving no, or very lenient, punishments. McCray stated that, during the times that he was suspended, he lost $3,088.80 in wages.
McCray had been reprimanded a total of fifteen times during his career with the Department, beginning in 1993.. During the instances of what McCray believed to be discrimination, the Chief of Police ultimately determined whether an officer should be suspended. McCray believed that the Chief knew about “pretty much everything” that happened in the Department.
Another African American officer, Officer Bryant, testified that he experienced discrimination during his employment with the Department, beginning in 1989. Officer Bryant was terminated in 2000, after he joined McCray and four other African American officers in filing the 1999 charges of discrimination. He testified to several instances of perceived discrimination where he violated a Department rule and received a harsher punishment than white officers who committed the same offense. A third African American officer, Sergeant Key, testified to the use of racial slurs by employees within the Department as well as his attempt to have .this conduct investigated.
McCray then offered the testimony of four non-African American officers who he believed had been treated more favorably than he. The first officer, Officer Myers, testified that he was disciplined for missing multiple court dates or depositions. Officer Myers missed traffic court in 2000, and in 2001 was given a letter of reprimand after he missed court a second time. In the same year, he was given an eight-hour suspension because he missed a deposition and it occurred within the same twelve-month period as him missing court. When he missed a deposition on a fourth occasion, in 2003, he received only a written reprimand because it was the first time in a twelve-month time span. Finally, he was- also disciplined in 2002 with a written reprimand for not reporting his use of force on an arrestee.
The second officer, Lieutenant Yates, testified that he was recommended for termination in about 1999, 2000 or 2001, due to multiple disciplinary problems. Officer Yates was accused of being “less than truthful” during an internal affairs investigation. He was terminated because of this, but was then reinstated. In 1999, he was accused of improper supervision; falsification of documents; violation of Department rules, regulations, policies and procedures; and witness intimidation. The allegations were substantiated. ' It was recommended by internal affairs that he be demoted, but he was given a letter of guidance, a thirty-day suspension without pay and a four-year period of probation instead. He also signed a last chance agreement that provided that if he engaged in similar conduct within four years of the agreement, he would be terminated. The agreement was signed in 2000. In 2002, a citizen complaint was filed against Lieutenant Yates alleging witness tampering. Internal affairs conducted an investigation and made two recommendations-one that he receive a twenty-day suspension and one that he be fired. Though the complaint was filed in 2002, a decision was not made until 2004. The report recommending termination indicated that Lieutenant Yates may have committed two fel *170 onies. Lieutenant Yates was ultimately given a twenty-day suspension. During his employment with the Department since 1980, Lieutenant Yates had been disciplined for:
conduct unbecoming an officer, falsifying a police record by failing to complete an accident investigation, negligent operation of a police vehicle resulting in an accident, disobeying an order from a supervisor, missed overtime assignment, carelessness with use of city equipment, violation of administrative procedure concerning extra duty details, failing to properly supervise a staff services section, making misleading and untruthful statements, conduct unbecoming of a City employee, excessive force during an arrest, unprofessional conduct towards a member of the public, falsifying records, professional complaint, improper supervision, leaving an uncivilized voicemail to a fellow officer, lobbying for a candidate that was disqualified by human resources, personal complaint use of force, improper supervision, improper professional misconduct, insubordination, AWOL, violation of department general conduct on duty, [and] improper professional conduct.
The third officer, Officer Shaw, testified that he was disciplined in 2001 for missing one deposition. He received a letter of reprimand. Officer Shaw was also disciplined for missing court in 1999 with a letter of reprimand. On no other occasion had he missed court or deposition. However, he had received a written reprimand for failing to seatbelt a prisoner on one occasion. Further, in 2000, he was “written up” for allowing another officer to complete an improper investigation.
The final officer, Captain Olsen, testified that, in 2000, a prisoner escaped from her vehicle. This was the only time that a prisoner escaped from her custody and she was not disciplined for it. She had not violated any rules regarding securing a prisoner when the prisoner escaped.
The City then presented testimony from Sheriff Bradshaw, who acted as Chief of Police from 1996 to 2004. Sheriff Bradshaw explained that, when someone made a complaint about an officer violating a rule, an investigation was conducted resulting in a final determination on whether the allegations were substantiated. If he approved that determination, the case was sent back to “supervision” for a recommendation as to discipline. A system of “progressive discipline” was typically used. Sheriff Bradshaw testified that the manner in which McCray had been disciplined on the five relevant occasions was consistent with Department policy. Further, while he would have received copies of the charges of discrimination filed by McCray, and indicated that he eventually became aware of McCray’s allegations, he could not recall the specific date on which he gained this knowledge.
The City moved for a directed verdict as to all claims. The trial court found that McCray made out a prima facie case for both discrimination and retaliation. The jury determined that the City had discriminated against McCray because of his race and/or retaliated against him for his complaints of racial discrimination. The jury awarded $230,000 in net lost wages and $0 for emotional pain and mental anguish.
Subsequent to entry of the verdict, the City filed a motion to set aside verdict and enter judgment in accordance with its motion for directed verdict or, in the alternative, motion for new trial. The trial court found that the jury’s verdict as to liability should not be disturbed. However, the trial court ordered a new trial on damages, reasoning that the evidence at trial showed that McCray’s lost wages for the time that he was suspended was ap *171 proximately $3,000. The trial court noted that the jury must have been confused and indicated that, as per the initial trial judge’s order, the termination claim was not a proper basis for awarding damages. The instant appeal was then filed where, inter alia, the City has challenged the finding of liability and McCray has challenged the order granting a new trial on damages. The trial court’s decision on a motion for a directed verdict is reviewed de novo. See City of Hollywood v. Hogan, 986 So.2d 634, 640M1 (Fla. 4th DCA 2008). “Only where no proper view of the evidence could sustain a verdict in favor of the nonmoving party may a trial court enter a directed verdict.” Greenberg v. Schindler Elevator Corp., 47 So.3d 901, 903 (Fla. 3d DCA 2010). A trial court’s ruling on a motion for a new trial is reviewed for an abuse of discretion. See Philippon v. Shreffler, 33 So.3d 704, 709 (Fla. 4th DCA), review denied, 47 So.3d 1290 (Fla.2010).
A prima facie case of employment discrimination may be established by either: direct evidence of discriminatory intent; statistical analysis showing a pattern of discrimination; or circumstantial evidence meeting the test established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See Washington v. Sch. Bd. of Hillsborough Cnty., 731 F.Supp.2d 1309, 1317 (M.D.Fla.2010). McCray used the McDonnell Douglas framework in proving his case because only circumstantial evidence was presented. When a plaintiff seeks to prove discrimination through a disparate treatment theory, the McDonnell Douglas test requires proof that: (1) the plaintiff belongs to a racial minority; (2) the plaintiff was subjected to adverse employment action; (3) similarly-situated employees, outside of the plaintiffs racial minority, were treated more favorably than the plaintiff; and (4) the plaintiff was qualified to do the job. See U.S. E.E.O.C. v. Mallinckrodt, Inc., 590 F.Supp.2d 1371, 1376 (M.D.Fla.2008). The City disputes only prong three. When a claim is based on disparate treatment, establishing a pri-ma facie case is sufficient evidence of pretext so that no further evidence is necessary. See Lobeck v. City of Riviera Beach, 976 F.Supp. 1460, 1467 n. 3 (S.D.Fla.1997) (stating that “[h]aving established a prima face case of disparate discipline, plaintiff need not demonstrate further evidence of pretext” because disparate discipline is sufficient to establish pretext). Further, “[e]mployees are similarly situated when they are ‘involved in or accused of the same or similar conduct.’” Fla. Dep’t of Children & Families v. Shapiro, 68 So.3d 298, 305 (Fla. 4th DCA 2011) (quoting Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir.1997)). The most important factors are the nature of the offenses and punishments imposed. See id. However, “ ‘[t]he quantity and quality of the comparator’s misconduct [must] be nearly identical.’ ” Id. (quoting Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir.1999)).
McCray’s evidence was sufficient to establish a prima facie case of discrimination/disparate treatment and retaliation. “[T]he elements of a prima facie case are flexible and should be tailored, on a case-by-case basis, to differing factual circumstances.” Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1123 (11th Cir.1993) (citation omitted). McCray presented evidence of disparate treatment through the comparator officers, most notably, through Lieutenant Yates whose disciplinary' history was far more severe than McCray’s. In addition to this, McCray offered other examples of discrimination that had been suffered by himself and fellow officers in the Department. Because each of the instances testified to by McCray and the *172 other witnesses occurred after McCray-made his initial complaints of discrimination to superior officers, the evidence was also sufficient to send the retaliation claim to the jury. See Shapiro, 68 So.3d at SOS-OS (noting that a plaintiff establishes a prima facie case of retaliation with evidence that: “(1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) there is a causal relation between the two events”).
Regarding McCray’s cross-appeal, McCray argues that the damages award was proper because the termination issue was subsequently admitted, after it had been erroneously excluded by the initial trial judge. However, the record indicates that, while the fact that McCray was terminated was presented to the jury, the termination issue was not before the jury. The trial court clearly instructed the attorneys and the jury that the only issues to be determined were based on the five instances of discipline. Further, the initial ruling on the motion in limine to exclude the termination issue functioned as a dismissal as to the termination count based on McCray’s failure to exhaust his administrative remedies. See Sunbeam Television Corp. v. Mitzel, 83 So.3d 865, 873-74 (Fla. 3d DCA 2012) (“[A]n individual claiming discrimination in the workplace must first file an administrative complaint with the FCHR ... and exhaust the administrative remedies ... before a civil action asserting discrimination may be brought.”). The City’s argument that the alleged wrongful termination could not be addressed because McCray had not complied with the statutory prerequisite was raised by a written motion served on McCray and was heard at a separate hearing. Cf. Rice v. Kelly, 483 So.2d 559, 560 (Fla. 4th DCA 1986) (cautioning “trial courts not to allow ‘motions in limine’ to be used as unwritten and unnoticed motions for partial summary judgment or motions to dismiss” but concluding that such error may be harmless). The fact that McCray had not complied with the statutory prerequisites was clear from the record. See Brewer v. Clerk of Circuit Court, Gadsden Cnty., 720 So.2d 602, 604 (Fla. 1st DCA 1998) (affirming dismissal of employment discrimination and retaliation complaint for failing to comply with statutory prerequisites where the issue of appellant’s noncompliance was tried by consent and determined by the trial court). As such, any error in the trial court’s limiting McCray’s damages claim via the motion in limine was harmless.
Finally, the termination issue was properly excluded, pursuant to National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (hereinafter “National R.R.”). Section 760.11 of the Florida Civil Rights Act (“FCRA”) provides that: “[a]ny person aggrieved by a violation of [the FCRA] may file a complaint with the commission within 365 days of the alleged violation....” § 760.11(1), Fla. Stat. Thus, McCray’s time to file a charge based on his termination expired a year after it occurred. Under the federal counterpart of the FCRA, “discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.” National R.R., 536 U.S. at 113, 122 S.Ct. 2061. Rather, “[e]aeh discrete discriminatory act starts a new clock for filing charges alleging that act.” Id. McCray argues that he was not required to file a new charge of discrimination because the termination was not a discrete discriminatory act, but, rather, was part of a continuing pattern of discrimination. We disagree.
The Supreme Court in National R.R. reasoned that claims based on discrete discriminatory acts must be filed within *173 the statutory time period because the date on which they occur is easily identified. See id. at 114, 122 S.Ct. 2061. On the other hand, ongoing acts of discrimination, such as the hostile work environment claim at issue in National R.R., involve repeated conduct. Thus, the Supreme Court reasoned that “[i]t does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period[,] [provided that an act contributing to the claim occurs within the filing period....” Id. at 117, 122 S.Ct. 2061. National R.R. involved discriminatory conduct that occurred prior to the statutory time period, whereas the instant case involves a termination which occurred subsequent to a timely charge of discrimination. Admittedly, the proper interpretation of National R.R. when applied to acts occurring subsequent to a timely charge of discrimination is unclear. Compare Martinez v. Potter, 347 F.3d 1208, 1210-11 (10th Cir.2003) (viewing National R.R. as requiring a claimant to timely file a new charge of discrimination for discrete incidents of discrimination and retaliation occurring after the time the original charge is filed) with Wedow v. City of Kansas City, Mo., 442 F.3d 661, 672-73 (8th Cir. 2006) (noting that National R.R. did not foreclose the possibility that “reasonably related subsequent acts may be considered exhausted,” and thus actionable, where the subsequent acts are “ ‘like or reasonably related to the administrative charges that were timely brought’ ”) (citation omitted). However, in accordance with the reasoning of National R.R., McCray’s termination is best viewed as an act that reset the time period in which to file a new charge of discrimination. See also Tademe v. Saint Cloud State Univ., 328 F.3d 982, 988 (8th Cir.2003) (noting that National R.R. makes clear that termination is generally considered a separate violation). The termination was a separate and different act from the allegations contained in McCray’s charges of discrimination and the date on which the termination occurred is easily identified. See Holder v. Nicholson, 287 Fed.Appx. 784, 793 (11th Cir.2008) (holding that plaintiffs discrimination claim based on a wrongful termination was properly excluded as the termination was a “separate act” and plaintiff treated each wrong as a “separate action” from her other claims). Because McCray failed to file a new charge of discrimination including the termination, he was properly prevented from presenting it during the instant proceedings. Further, since the termination was not an issue for the. jury, the jury was limited to awarding damages based only on the five suspensions properly at issue. There is no evidence in the record supporting a damages award of $230,000. Thus, the trial court’s order of a new trial was appropriate.
Based on the above reasoning, the trial court’s order is affirmed in all respects.

Affirmed.

WARNER and CONNER, JJ., concur.