ERVIN, Justice.
By petition of the employer-carrier and cross-petition of the claimant, we are requested to review by certiorari an order of the Florida Industrial Commission affirming in part and reversing in part an order of a Deputy Commissioner.
The Deputy found that claimant was temporarily totally disabled as a result of a heart attack caused by an accident during the course of his employment. The Deputy also found that claimant suffered from a pre-existing condition of arteriosclerosis and apportioned claimant’s disability, attributing 35% to the pre-existing disease and 65% to the accident. A penalty of 10% was assessed against petitioners by the Deputy for their failure to pay compensation benefits to claimant, although they had knowledge of the claim, and be *610 cause they failed to file a notice to controvert pursuant to F.S. § 440.20(4), F.S.A.
With the exception ■ of the penalty assessed against petitioners, the full Commission affirmed the Deputy’s order. The full Commission held that there was no justification for the penalty assessment and reversed the Deputy on this issue..
■ Petitioners contend that the Deputy erred in finding that claimant sustained a com-pensable injury and the heart attack was causally related. They also contend that the Deputy erred in determining the extent of apportionment because there was no evidence with respect to the percentage of disability attributable to the pre-existing condition.
Claimant contends there is .no competent, substantial evidence to ' support any apportionment of claimant’s disability because the Deputy’s finding that claimant had a pre-existing cardiovascular disease is not supported by the evidence/ Claimant also contends that the full Commission erred in reversing the Deputy on the issue of the penalty assessment. .
The following appears in the Deputy’s findings of fact:
“6. I find that the claimant is a sixty .year old white male, employed as an accountant with the herein employer; that his customary duties consist of sedentary work as an accountant and that he is not required to do any heavy work or manual labor in the course of his employment. I find that on December 26, 1963, the claimant was delivering an automobile for his employer and while driving on U. S. Highway No. 1 in Miami, Florida, the car ran out of gas; that said highway was busy with traffic and it was necessary for the claimant to push the car off of the highway; and that as he was pushing the car he felt a sudden sharp pain in his chest and arm, followed by a generalized weakness, forcing him to rest for a long period of time before he was able- to continue his trip.”
From the testimony of the only medical expert witness, Dr. Lester Archer, the Deputy found that claimant suffered a myocardial infarction. He also found that the injury arose out of and during the course of claimant’s employment and that the claimant’s pushing of the car constituted an unusual strain, uncommon and not routine to claimant’s employment.
Our examination of the record leads us to conclude that the Deputy’s findings in this respect are supported by competent substantial evidence. The medical testimony alone supports the Deputy’s findings as to the causal relation of claimant’s heart attack and his pushing of the car. . This seems to be the only conclusion which the record could support.
With respect to the question of apportionment, we agree with both parties that the record does not contain evidence to support the Deputy’s findings, that 35% of-claimant’s total disability is attributable to a pre-existing condition of arteriosclerosis and 65% to the accident. We must go further, however, and agree with the claimant that the record does not support any apportionment of claimant’s disability. The Deputy was under the impression that he was required to apportion on the theory that everybody in general, particularly everybody in claimant’s age group, has some degree of arteriosclerosis, and that this condition is in part responsible for heart attacks. The Deputy asked the medical witness, Dr. Archer, whether everybody has some degree of arteriosclerosis and the witness replied that they do. The witness was questioned at length on this subject and the sum of his testimony was that this general condition and its effect and causal relation to heart attacks is indefinite with no way of actually estimating or evaluating the part it plays in causing or accelerating heart attacks or otherwise affecting one’s longevity. The witness stated:
“This [referring to arteriosclerosis] gets some of us, but doesn’t get others *611 of us. The man who lives to he 90 may have an appreciable amount of coronary atherosclerosis at the age of 50, say, and this we do not have any real good way of evaluating.”
Earlier, the witness stated positively that he “ * * * found no evidence of any preexisting condition * * * ” in the claimant.
The Deputy was convinced, however, that claimant had such pre-existing condition and that it was partially responsible for the heart attack, so he tried to pin the medical witness down and get his opinion as to what percentage the heart attack could he attributed to the pre-existing condition:
“THE COMMISSIONER: Doctor, it is my job and duty when there is a suspicion of an underlying condition to an injury to apportion the disability as to the main disability.
I would ask you, sir, if you can tell me and help me in my findings when considering this man’s age and his physical ability and other factors as best known to you of how much this claimant had in the way of arteriosclerosis when he suffered his, according to you, heart attack.
Can you give it to me?
THE WITNESS: I don’t know.
The only thing that suggests is, well, cholesterol was a little bit elevated. We don’t know how much cholesterol means yet. My own personal feeling is the more I play with cholesterol the less I believe in it.
MR. CORNELL [of counsel for the carrier] : In you or somebody else ?
THE WITNESS: I don’t think that. I don’t believe we can use cholesterol as an adequate gauge when we know this from experience. We can’t say this man has a cholesterol of 300. Maybe this would be true in wide groups, but when we start applying percentages, it is hard to say where to draw the line, and I can’t give you any kind of percentage.
THE COMMISSIONER: Doctor, in the final analysis are you saying, sir, you cannot give me a pre-exist-ing percentage as regards his heart condition ?
THE WITNESS: That’s right.”
The testimony of the medical witness was all that the Deputy had on which to base his findings that claimant had a pre-existing condition of arteriosclerosis and that 35% of claimant’s disability was attributable to this condition. There is no possible way from this record for this Court to hold there is competent, substantial evidence to support these findings. To uphold the Deputy would require this Court to indulge in conjecture and speculation in an area where we have no expertise. The medical witness who testified as an expert refused to speculate in this area. We must hold there is no competent, substantial evidence to support apportionment of claimant’s disability.
On the question of the penalty assessment, we agree with claimant that the full Commission erred in reversing the Deputy’s assessment of a penalty against petitioners. The Deputy found that petitioners, with knowledge of claimant’s injury, failed to pay compensation benefits to claimant and failed to file a notice to controvert pursuant to F.S. § 440.20(4), F.S.A. Petitioners offered no evidence or testimony to the Deputy to excuse these failures. Petitioners argue . to this Court that investigation of heart cases is tedious and difficult and they should not be penalized for not timely meeting their legal requirements and obligations. We may sympathize, but this is not ground in law for excusing petitioners from timely meeting obligations or controverting as required *612 by law. The full Commission gave no reason for reversing the Deputy; we find none and therefore reverse the full Commission on this issue.
For the foregoing reasons the petition for certiorari is denied and the cross-petition is granted. The orders of the full Commission and of the Deputy are quashed, and the full Commission is directed to enter an order consistent with this opinion.
It is so ordered.
THORNAL, C. J., and THOMAS and ROBERTS, JJ., concur.
CALDWELL, J., dissents.