245 So.2d 76 (1971)
Anne E. TINGLE, Petitioner,
v.
DADE COUNTY BOARD OF COUNTY COMMISSIONERS, Dade County Port Authority and Bituminous Casualty Corporation, and Industrial Relations Commission, Respondents.
No. 39315.
Supreme Court of Florida.
February 17, 1971.
Rehearing Denied March 25, 1971.
J.H. Kaiser, Hialeah, for petitioner.
Eugene E. Williams of Williams & Jabara, Miami, Patrick H. Mears and J. Franklin Garner, Tallahassee, for respondents.
*77 DEKLE, Justice.
This is the third appearance of this cause before this Court since the employee's accident June 1, 1963, and subsequent demise four days later.[1] After having heard oral argument and carefully reviewing the record, we find that only two of petitioner's six points require comment.
The Deputy Commissioner who originally heard the claim and entered the first two orders died before the latest remand by the Industrial Relations Commission and this Court. The claim was subsequently assigned to Judge James R. Sabatino, who took additional testimony and evidence before entering the order approved by the Industrial Relations Commission and presently here for review.
Petitioner objects to Judge Sabatino's reducing from 50 per cent to 25 per cent the proportion of medical expenses to be paid by the employer/carrier. The initial order awarding benefits was reversed and remanded, and the claim sent to Judge Sabatino with directions to redetermine the death benefits previously awarded.[2] The law prevailing at the time of the injury made it mandatory under the circumstances of this case to apportion medical as well as compensation benefits.[3] A reduction of compensation naturally led to a reduction in reimbursable medical expenses. Apportionment of the award between the preexisting disease and the industrial accident was the very point on which the case was reversed and remanded by this Court, so that the prior apportionment by the original deputy commissioner could not have become the law of the case.[4] Under these circumstances the Judge of Industrial Claims has correctly exercised his discretion and heard additional evidence on the apportionment issue. The medical expense reduction was proper.
Petitioner asserts that the Judge's finding that only 25 per cent of the employee's death is attributable to the accident is not supported by competent substantial medical evidence and that he erred in basing his findings in part upon the existing record made before his late predecessor. We do not agree.
The new judge heard additional medical testimony on the apportionment issue and allowed each party to point out specific portions of the record already compiled upon which they wished to rely. We do not find that the claimant was prejudiced by the fact that the Judge of Industrial Claims relied upon portions of a written record of prior evidence and testimony, as well as testimony taken before him. The opinion testimony supporting the Judge's findings was based upon reasonable medical certainty; there was competent substantial evidence to support the award made.
The historic rule was that a court's order remains inherently under the control of the court "during the term at which they are rendered."[5] Even this limitation (to "the term") was removed by Civil Rule 1.6(c).[6] Civil Rule 1.540, 31 F.S.A. further extends the period and grounds for the court's continuing control of its orders and judgments.
There is a limitation, however, on a successor judge's reconsideration of his predecessor's final judgments and orders, (1) upon the merits on the same facts absent mistake or fraud (and now on the *78 extended grounds in Civil Rule 1.540), and (2) upon discretionary final rulings where the facts remain unchanged. Such prior final rulings have been held by this Court not to be subject to reversal, modification or review by a successor judge,[7] absent the grounds in Civil Rule 1.540. In the event, however, that subsequent events may defeat the prior judgment, the successor does have authority even after final judgment to make such further order as may be necessary to effectuate the judgment. Also, where the final order or judgment is not complete, the succeeding judge may supply the element which may have been omitted.[8]
While a judge should hesitate to undo his own work, and should hesitate still more to undo the work of another judge, he does have, until final judgment, the power to do so and may therefore vacate or modify the interlocutory rulings or orders of his predecessor in the case. This "code" of restraint is not based solely on the law of the case but is founded upon considerations of comity and courtesy.[9] It has been held that a succeeding judge may adopt the findings of fact of his predecessor and render judgment thereon.[10] Upon a remand of the case, as here, the trial judge was of course back in the interlocutory stage of the proceedings, his predecessor's "final judgment" being no longer "final" upon the earlier remand by this Court, and was therefore authorized to proceed as he did.
Having found that the remaining points argued by petitioner are without merit, and that the Industrial Relations Commission made no error in affirming the compensation order of the Judge of Industrial Claims, the petition for writ of certiorari is denied. Petitioner's request for attorney's fees is also denied.
It is so ordered.
ROBERTS, C.J., and CARLTON, ADKINS and McCAIN, JJ., concur.
ERVIN, J., dissents with opinion.
ERVIN, Justice (dissenting):
Employee, James Tingle, 34 years old, with no known previous heart condition or disability, was employed by the Dade County Port Authority in 1963. In June of that year, in the course of his employment he attempted to turn a large wrench. The wrench slipped off. Employee was thrown into an awkward position. He sustained immediate chest pains. Four days later he died of an acute myocardial infarction of the left coronary artery. Claim for compensation was denied by the J.I.C. On review here, employee's accident was held to be a compensable one. Tingle v. Board of County Commissioners, Fla. 1965, 174 So.2d 1.
On remand, the J.I.C. (Judge Halpert) found from medical evidence employee would have lived ten years longer but for the job-related heart attack. He allowed Petitioner, employee's widow, Anne E. Tingle, maximum compensation within statutory limits (F.S. § 440.16, F.S.A.) of 350 weeks and reimbursement of one half the medical bills and $500 funeral expenses.
The employer-carrier appealed the J.I.C.'s order and apportionment of the unknown and previously nondisabling heart condition of the deceased employee was ordered. See Tingle v. Board of County Commissioners, Fla. 1968, 214 So.2d 1.
*79 While I consider the decision reported in 214 So.2d 1 anomalous because no other pre-existing, nondisabling disease or injury condition (except in death cases) is apportionable unless its natural progress is disabling at time of final compensation award and contributing in part to claimant's permanent disability, along with the accident injury, nevertheless under the exception the evidence on apportionment should satisfy the general rule requiring substantial, competent evidence comporting with logic and reason.
It appears that after the first remand following this Court's decision reported in 174 So.2d 1, hearings were held in which Dr. Morton Halpern testified that but for the accident, even with the pre-existing but unknown heart disease the employee would have lived another ten years. Dr. William Straight testified that in his opinion the accident did not contribute to employee's death. Neither would express medical opinions at those hearings as to apportionment percentages because they considered opinions thereon too speculative.
On the second remand after this Court's decision reported in 214 So.2d 1, relating to apportionment, the carrier presented Dr. Halpern as its witness. He stated he had been requested to testify by carrier on the matter of apportionment on the basis of percentages. He qualified his testimony with the caveat that he was testifying "with the understanding that it is speculation, but still within reasonable medical probability." He opined that the pre-existing heart condition accounted for 75 per cent of the death and the accident stress and trauma 25 per cent. The doctor agreed that if it had not been for the accident, employee would still be alive. The hearing at which the doctor gave this testimony was held on February 14, 1969, more than five years after employee's death.
Dr. Straight, in a deposition submitted by the carrier for consideration, stated that he was still of the opinion expressed at the first hearing in 1964 that the accident played no part in employee's death but that since testimony of percentages was judicially necessary for determining apportionment in the case he would roughly estimate about 25 per cent of the cause of death was due to the accident, if he was forced to apportion it. He agreed, however, that it is speculative to say that 25 per cent of employee's death was due to the accident.
The J.I.C. agreed with the testimony of these two doctors, rather than other medical evidence in the case far more favorable to claimant, and changed the original order of his deceased predecessor (Judge Halpert), awarding the widow only 25 per cent of the statutory limit of 350 weeks' compensation, or 87.5 weeks, and ordered payment of only 25 per cent of the medical bills.
It appears to me the percentage evidence of the two physicians on which the apportioned award was based is entirely too speculative, as they candidly admitted, and contrary to their testimony at earlier hearings, to constitute competent, substantial evidence comporting with logic and reason. Compare G. & L. Motor Corporation v. Taylor, Fla., 182 So.2d 609.
Although our Court has held apportionment on the basis of percentages should be made in death cases of this kind, no apportionment can be made when the medical evidence thereon is admittedly so highly unreliable and speculative it fails to satisfy the governing evidentiary rule. Instead, in such situation, the award necessarily should be predicated on medical evidence of the life (time) expectancy of the employee (death victim), i.e., in terms of the normal progress of his disease or disability, similarly as in cases where there is no death of the employee. "* * * [O]nly acceleration of death * * * attributable to the accident * * * shall be compensable," according to F.S. Section 440.02(19), F.S.A. Acceleration, of course, refers to time and not to death contributing percentages.
The great difficulty in a nebulous case of this kind is in attempting to obtain honest *80 medical evidence to apportion an award where the employee has a nondisabling disease or condition that contributes to his death when he suffers a compensable accident. Even though an exception is made in death cases to the usual rule that a nondisabling condition or disease is not ordinarily apportionable in the case of an injured employee who survives a compensable accident, it is hardly compatible with the liberal intendment of the Workmen's Compensation Act to allow speculative evidence of the kind here offered to reach a contrived result and deny the widow the compensation benefits without apportionment that would have been legally allowable to her husband had he survived the accident. G. & L. Motor Corporation v. Taylor, supra, and Victor Wine & Liquor, Inc. v. Beasley, Fla. 1962, 141 So.2d 581.
NOTES
[1] Tingle v. Board of County Commissioners, 174 So.2d 1 (Fla. 1965); Tingle v. Board of County Commissioners, 214 So.2d 1 (Fla. 1968).
[2] Tingle v. Board of County Commissioners, 214 So.2d 1 (Fla. 1968).
[3] Shores Development, Inc. v. Carver, 164 So.2d 803 (Fla. 1964).
[4] Steele v. Pendarvis Chevrolet, Inc., 220 So.2d 372 (Fla. 1969).
[5] Alabama Hotel Co. v. J.L. Mott Iron Works, 86 Fla. 608, 98 So. 825 (1924); State v. City of Sarasota, 154 Fla. 250, 17 So.2d 109, 111 (1944).
[6] Ramagli Realty Co. v. Craver, 121 So.2d 648, 653 (Fla. 1960).
[7] Lawyers Co-operative Pub. Co. v. Williams, 149 Fla. 390, 5 So.2d 871 (1942). (Involving Motion for New Trial, Petition for Rehearing, Motion to Vacate the Final Judgment)
[8] 33 C.J. Judges § 104 (p. 973); 48 C.J.S. Judges § 56c (pp. 1021-1022); Annot., 132 A.L.R. 14 (1940).
[9] Id.
[10] Newburyport Inst. for Savings v. Coffin, 189 Mass. 74, 75 N.E. 81; Edmonds v. Riley, 15 S.D. 470, 90 N.W. 139; 48 C.J.S. Judges § 56 (pp. 1019-1020).