# Third District Court of Appeal

## State of Florida

Opinion filed December 21, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D18-1016
Lower Tribunal No. 15-18158

_____

**James Fratangelo, et al.,**
Petitioners,

vs.

**John Olsen,**
Respondent.

On Petition for Writ of Certiorari from the Circuit Court for Miami-Dade County, William Thomas, Judge.

Gunster, and Angel A. Cortinas and Jonathan H. Kaskel, for petitioners.

Buchanan Ingersoll & Rooney PC, and Jennifer Olmedo-Rodriguez and Mark S. Auerbacher, for respondent.

Before ROTHENBERG, C.J., and SUAREZ and LAGOA, JJ.

SUAREZ, J.

James Fratangelo et al.[1] ("Fratangelo") petition for writ of certiorari and to

quash the trial court's April 20, 2018 non-final Order, and to instruct the trial court

[1] The Petitioners include Fratangelo and several of his companies: 21 Assets Management Holdings, LLC ("21-AMH"); Assets Recovery 23, LLC ("AR23"); BLB Trading, LLC; AMH 21 Trust; AMH 21, LLC; Assets Recovery 24, LLC; and Assets Recovery 27, LLC.

to enter final judgment for Fratangelo, or, alternatively, to instruct the trial court to enter final judgment based on the twenty-six assets and remaining counts that were tried in the November 27, 2017 bench trial. We dismiss the petition, as Fratangelo has failed to show any required irreparable harm.

FACTS

James Fratangelo, John Olsen, and Daniel Coosemans[2] together owned multiple limited liability companies ("LLCs") and subsidiaries formed to invest in and rehabilitate low or non-performing assets. Two primary LLCs are at issue in this appeal: 21-AMH, and AR23. Olsen was the original owner of 21-AMH, but Fratangelo eventually became a 50% owner. Effective January 1, 2013, Olsen and Fratangelo entered into purchase and sale agreements ("General Agreements"), to divest Olsen of his role in 21-AMH and to leave Fratangelo sole owner, at least on paper.[3] Around March of 2014, Fratangelo and Olsen decided to part ways, and to wind up their multiple business relationships. Effective September 1, 2014, Olsen

---

[2] Coosemans settled his case against Fratangelo. The trial court granted Coosemans' motion to enforce that December 1, 2017 Settlement Agreement, and Fratangelo's appeal from that order is currently pending before this Court, see 3D18-705.

[3] The trial court found that, based on evidence in the record, Olsen and Fratangelo continued to make management decisions regarding 21-AMH even after the purchase and sale agreement.

2

and Fratangelo entered into Amended Agreements wherein Olsen agreed to release Fratangelo from any and all claims arising before that effective date, including all claims arising from disposition of 21-AMH assets, including the subsidiaries. The Amended Agreements also provided for division of assets and an accounting for any missing, unknown, or concealed assets (the "Missing Assets").

Olsen ultimately sued Fratangelo for 1) breach of the 21-AMH agreement; 2) breach of the AR23 agreement; 3) joint venture; 4) declaratory relief; 5) equitable accounting; and 6) unjust enrichment. Olsen alleged that Fratangelo sold or transferred assets of 21-AMH and AR23 prior to the effective dates of the General and Amended Agreements, hiding these transactions from Olsen and thereby diminishing the number and value of missing assets.

FIRST TRIAL

The trial court dismissed Olsen's joint venture count and entered a partial final judgment in favor of Fratangelo regarding the Release, determining the Release was valid and enforceable, and that Olsen expressly agreed to extinguish any claims involving 21-AMH arising prior to September 1, 2014. The court found that Olsen had sufficient information to determine the identity of Missing Assets and to demand liquidation under the General Agreements, and had no membership interest in 21-AMH after the effective date of first General Agreement. The trial court directed the parties to prepare a joint list of all potential Missing Assets. The parties submitted a list of 525 potential Missing Assets.

3

- At the end of the discovery period, the trial court granted partial summary judgment in favor of Fratangelo by concluding 460 of the potential Missing Assets were actually sold and payment was made to Olsen.

- The trial court granted partial summary judgment in favor of Fratangelo on Olsen's claims regarding thirty-two additional assets, concluding those were not Missing Assets. Seven of those had been transferred to a subsidiary of 21-AMH.

- The trial court granted partial summary judgment in favor of Fratangelo on Olsen's claims regarding seven additional assets, concluding they had been charged off and Olsen had abandoned any claims to them.

- The trial court granted partial summary judgment on Olsen's breach of contract claims against five more assets, but allowed Olsen's claims as to those five assets to proceed for equitable accounting.

SECOND TRIAL

At the time of the second trial in front of a successor judge, only twenty-six assets remained to be determined. The trial court denied Olsen's motion to bifurcate the issues of liability and damages, and proceeded to conduct an eight-day bench trial, during which the trial court, upon considering new testimony and evidence, revisited and reversed several of the prior partial summary judgments. The trial court found that the parties were partners, and that disposition of certain

4

assets prior to the September 1, 2014 Amended Agreement could result in cognizable claims against Fratangelo. The court found that Olsen did not release Fratangelo from claims arising out of those asset transfers, that Fratangelo had breached the General Agreements, and that Olsen was entitled to recover the value of assets transferred prior to September 1, 2014, and for revenue generated from all Missing Assets. The trial court determined that,

> Based on the facts presented, the Court finds that the greater weight of the evidence shows Defendants breached obligations by failing and refusing to disclose and/or account for Missing Assets; failing to make appropriate distributions; and failing to provide cooperation in regards to documenting and liquidating or transferring "Transferred Assets."

The trial court ordered a third trial for equitable accounting, explaining that without such an accounting Olsen was not capable of fully quantifying his damages. Fratangelo moved for entry of final judgment and reconsideration of the non-final Order, arguing it was based on 1) an impermissible finding of an unpled partnership; 2) due process violations stemming from the un-noticed reconsideration and reversal of prior partial summary judgments; 3) erroneous retention of jurisdiction to allow Olsen to pursue an equitable accounting. The trial court denied the motion, and Fratangelo here petitions for a writ of certiorari seeking to quash that order and enter judgment in his favor.

## ANALYSIS

We note that the Petitioners seek review of the trial court's non-final order via petition for certiorari, rather than by waiting until the litigation has concluded

5

to take an appeal from the as yet undetermined Final Judgment. Therefore, our standard of review is not what it would be for an appeal from a final judgment. A non-final order for which no appeal is provided by rule is reviewable by certiorari only in extremely limited circumstances. The non-final order is reviewable only if the order is a departure from the essential requirements of law and thus causes material injury to the petitioner throughout the remainder of the proceedings, effectively leaving no adequate remedy on appeal.[4] See Bd. of Trs. of Internal Improvement Trust Fund v. Am. Educ. Enters., 99 So. 3d 450, 454 (Fla. 2012); Williams v. Oken, 62 So. 3d 1129, 1132 (Fla. 2011) (quoting Reeves v. Fleetwood Homes of Fla., Inc., 889 So. 2d 812, 822 (Fla. 2004)); Allstate Ins. Co. v. Langston, 655 So. 2d 91, 94 (Fla. 1995). The threshold question that must first be addressed by this Court, before we may address the petition itself, is whether there is a showing of a material injury/irreparable harm that cannot be corrected on appeal. See Citizens Prop. Ins. Corp. v. San Perdido Ass'n, Inc., 104 So. 3d 344, 351 (Fla. 2012) (holding that before certiorari can be used to review non-final orders, the appellate court must focus on the threshold jurisdictional question of whether there is a material injury that cannot be corrected on appeal). Only after irreparable harm has been established can an appellate court then review whether

---

[4] Many of the arguments raised in the petition are arguments which may be appropriate and relevant for review upon appeal of a final judgment but not on certiorari review of a non-final order.

6

the petitioner has also shown a departure from the essential requirements of law. Id.

We first consider the threshold jurisdictional issue of irreparable harm. Fratangelo claims that as a result of the trial court's non-final order he has suffered prospective loss of business and impaired relationships with employees and vendors. He asserts he has suffered irreparable harm because 1) companies with which he previously did business, or was negotiating to do business with, have been reluctant to engage in business with him; 2) prospective lenders have notified him that his reputation stemming from this lawsuit may impair his ability to conduct future business; 3) prospective principals to a proposed new company have expressed "concern and reluctance" to proceed as a result of the trial court's order; and 4) some of his employees have received negative emails about their employment with Fratangelo's companies. As a matter of law, however, none of these claimed damages rise to the level of an irreparable injury that cannot be addressed on appeal from a final judgment. Fratangelo's claims of reputational harm and others' "reluctance" to engage in prospective business deals are too prospective and speculative in nature to invoke the certiorari jurisdiction of this Court, which may be exercised only upon a proper, legally recognized showing of irreparable harm. See Martin–Johnson, Inc. v. Savage, 509 So. 2d 1097, 1100 (Fla. 1987) (recognizing that to establish the type of irreparable harm necessary in order to permit certiorari review, a party cannot simply claim that continuation of the

7

lawsuit would damage one's reputation); Holden Cove, Inc. v. 4 Mac Holdings, Inc., 948 So. 2d 1041, 1042 (Fla. 5th DCA 2007) (stating irreparable harm cannot be premature or speculative). Without this threshold showing of irreparable harm, Fratangelo has not met the required jurisdictional threshold for us to consider the petition and, therefore, the petition for certiorari must be dismissed.

We write further only to state that, even had that jurisdictional threshold been met, certiorari would still not be an appropriate remedy. Fratangelo's due process arguments fail to consider that prior to final judgment, a successor judge has the power to vacate or modify a predecessor's interlocutory rulings, such as an order on a motion for summary judgment. Because the trial judge here had not entered a final judgment in the case, he could modify his previous rulings and those of his predecessor. See Tingle v. Dade Cty Bd. of Cty Commissioners, 245 So. 2d 76, 78 (Fla. 1971) (successor judge may "vacate or modify the interlocutory rulings or orders of his predecessor in the case."); Wasa Int'l Ins. Co. v. Hurtado, 749 So. 2d 579 (Fla. 3d DCA 2000). To be sure, the facts became more fully developed once the litigation entered the second trial phase. During the second trial phase, the court found substantial competent evidence that Fratangelo breached the General Agreements by hiding and transferring assets for his own gain. Fratangelo has not made any convincing argument that the equitable accounting ordered by the trial court is error. Indeed, after hearing the evidence presented, the trial court specifically held that the contract demands between the litigants involve extensive

8

or complicated accounts and that it was not clear that the remedy at law is as full and adequate as it is in equity.[5]  In light of the 8-day bench trial during which the trial court heard extensive additional evidence and weighed the credibility of multiple witnesses, the trial court was free to revisit any prior interlocutory, non-final orders entered by the predecessor judge – including, but not limited to, the findings of fact and conclusions of law made by the predecessor judge in the September 6, 2016 Order.  Accordingly, we find the Petitioner's due process arguments and reliance on St. Petersburg Hous. Auth. v. J.R. Dev., 706 So. 2d 1377, (Fla. 2d DCA 1998), and Levy v. Ben-Shmuel, 255 So. 3d 493 (Fla. 3d DCA 2018), to be inapposite, as the facts in both of those cases arose out of final judgments and not, as here, from a non-final order. This litigation is not ended, and until a Final Judgment is rendered, the Petitioners have not met their burden to establish either irreparable harm or a departure from the essential requirements of the law.

Having found no material or irreparable harm that cannot be remedied on appeal from a final judgment, we dismiss the petition.

Lagoa, J., Concurs.

---

[5] We find Fratangelo's concern that the trial court has given Olsen "unfettered access" to confidential financial records to be easily remedied by a motion filed in the trial court to seal those records to prevent unauthorized disclosure. See e.g., Eberhardt v. Eberhardt, 666 So. 2d 1024 (Fla. 4th DCA 1996) (holding that discovery requiring production of personal income tax returns in case involving claim for breach of contract and accounting, in and of itself, not irreparable harm).

ROTHENBERG,                    C.J.     (dissenting).

The petitioners, James Fratangelo ("Fratangelo") and several of his companies, 21 Assets Management Holdings, LLC ("21-AMH"), Assets Recovery 23, LLC ("AR23"), BLB Trading, LLC ("BLB"), AMH-21 Trust, AMH 21, LLC ("AMH 21"), Assets Recovery 24, LLC ("AR24"), and Assets Recovery 27, LLC ("AR27") (collectively, "the petitioners"), seek certiorari review of the trial court's non-final April 20, 2017 order issued after a bench trial. Because the record reflects that the trial court departed from the essential requirements of law, resulting in irreparable harm that cannot be adequately remedied on direct appeal, the petition should be granted.

### The Underlying Lawsuit

Fratangelo, respondent John Olsen ("Olsen"), and Daniel Coosemans ("Coosemans") entered into a business relationship in 2007 wherein they formed limited liability companies for the purpose of purchasing performing and non-performing first and second mortgages, home equity loans, lines of credit, credit card debt collections, non-performing auto loans, and REO properties ("distressed assets"). Through these limited liability companies, the parties improved the performance of the loans and the payment of debts or liquidated them for a negotiated cash settlement. The parties' relationships were governed by fully integrated limited liability company operating agreements.

There were three sets of companies, which the parties generally refer to as the "Miami Companies," the "Panama Companies," and the "Virgin Island

11

Companies." The Miami Companies included 21-AMH and its subsidiaries, BLB, AMH-21 Trust and AMH 21. The Panama Companies included AR23, AR24, and AR27. The Virgin Island Companies included various companies, which will not be identified as they are not relevant to this petition. At various times, the parties were members of and managed their businesses through two primary limited liability companies: (1) 21-AMH, the Miami Company, operated by Fratangelo and Olsen; and (2) AR23, the Panama Company, which was managed by Coosemans.

In August 2011, Olsen withdrew from AR23 and thereafter Fratangelo and Coosemans each had a 50% membership in AR23. The operating agreement was therefore amended to reflect that as of August 2011, Olsen had no membership interest in AR23.

On January 1, 2013, Olsen also entered into a purchase and sale agreement with Fratangelo ("the original 21-AMH agreement) wherein he divested his membership interest in 21-AMH (the Miami Company). Pursuant to this agreement, Fratangelo was to pay Olsen $300,000 within 24 months; Olsen was to receive the redemption assets listed on Schedule A and the sold assets listed on Schedule B; and Fratangelo was to receive the assets listed on Schedule C.

Although, as of January 1, 2013, Olsen no longer had an ownership interest in 21-AMH, and he never had an ownership interest in any of the 21-AMH subsidiaries, Olsen continued to maintain a working relationship with Fratangelo

12

and worked as the asset manager of one of Fratangelo's companies, Asset Recovery Management Co.

On September 1, 2014, Fratangelo and Olsen executed an amended and restated purchase and sale agreement ("the amended 21-AMH agreement") which was then attached to and incorporated into the original purchase and sale agreement. The amended 21-AMH agreement provided that Olsen would receive millions of dollars in assets in exchange for signing a broad release, whereby Olsen agreed to release and forever discharge Fratangelo and 21-AMH from any and all claims related to Fratangelo's acts or omissions prior to September 1, 2014. Olsen also agreed to assume 21-AMH's non-bank debt in exchange for additional assets.

The amended 21-AMH agreement also provides for the distribution of assets not listed on Schedules A, B, or C, and which were referred to in the amended 21-AMH agreement as the "missing assets." The "missing assets" provision of this agreement, however, limited the distribution of the "missing assets" to those assets owned by 21-AMH prior to the "effective date," which was the date Fratangelo and Olsen entered into the amended 21-AMH agreement: September 1, 2014. Paragraph 3.(g) of the amended 21-AMH agreement provides in relevant part as follows:

> Missing Assets. . . . In the event as of the Effective Date any of the Asset Companies owns any other assets (other than its interest in entities that are parties to this Agreement, and other than as set forth in clause (h) below), either directly or indirectly, then Fratangelo (the "**Paying Partner**") shall pay Olsen ("**the Payee Partner**") one-half (1/2) of the net market value of such asset.

The procedure for distribution of the missing assets was also provided. Olsen was required to make a written demand for his 50% share of the net market value of an identified missing asset; Fratangelo would confirm that the asset identified by Olsen was an asset owned by 21-AMH as of September 1, 2014 and was not listed on Schedules A, B, or C; Fratangelo would sell the missing asset; and then Fratangelo would distribute 50% of the net market value of the missing asset to Olsen.

However, as already stated, the amended 21-AMH agreement also included a broad release whereby Olsen agreed to release and forever discharge Fratangelo and 21-AMH from any and all claims related to Fratangelo's acts or omissions prior to September 1, 2014. The release language in paragraph 4.3. of the amended 21-AMH agreement provides as follows:

> Seller hereby waives, releases and forever discharges Fratangelo and the Company from and against all manner of actions, cause and causes of action, suits, debts, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, obligations, liabilities, costs, expenses, losses, damages, judgments, executions, claims and demands, of whatever kind and nature, in law or in equity, whether known or unknown, whether or not concealed or hidden, arising out of or relating to any matter, cause or thing whatsoever, that Seller may have had or now has by reason of any matter or thing whatsoever arising out of any or in any way connected to the Company or the Redemption Assets, excluding the obligations of Fratangelo and/or the Company hereunder, under that certain General Agreement among Fratangelo, the Company, Olsen and other parties thereto dated as of September 1, 2014 and that certain [sic] General Agreement among Fratangelo, Daniel Coosemans, Olsen and other parties thereto dated as of September 1, 2014 (collectively, the "**General Agreements**.").

After executing the amended 21-AMH agreement, Olsen came to believe that in the months prior to the agreed-upon September 1, 2014 effective date, Fratangelo and 21-AMH sold or transferred assets of the Asset Companies, thereby diminishing the number and value of the missing assets. Olsen sued the petitioners for: (1) breach of the 21-AMH amended agreement (referred to as the "General Agreement"); (2) breach of the AR23 agreement; (3) joint venture; (4) declaratory relief; (5) equitable accounting; and (6) unjust enrichment. Olsen's count for joint venture sought to pierce the corporate veil of the various limited liability companies and have the trial court declare that Olsen and Fratangelo were joint venturers.

## The Trial Court's Interim Rulings

### A. Olsen's claim for joint venture

Olsen sought in his amended complaint to have his relationship with Fratangelo and Coosemans declared a joint venture. In order to establish the existence of a joint venture, Olsen sought to pierce the corporate veil of the various limited liability companies in which he and Fratangelo were associated. On January 11, 2016, the trial court (Judge Jennifer Bailey) granted the petitioners' motion to dismiss Olsen's joint venture claim (count III), but gave Olsen ten days to amend count III. Olsen failed to amend his joint venture claim. Olsen therefore abandoned his joint venture claim thus leaving intact the designation and protections provided to limited liability companies.

15

## B.  Olsen's motion for a temporary injunction

Olsen sought to enjoin the sale or transfer of the petitioners' assets.  On February 9, 2016, Judge Bailey conducted a hearing on Olsen's motion for injunctive relief and denied the motion.

## C.  Partial final judgment following a bench trial

In order to limit the issues, Judge Bailey bifurcated the case and conducted a two-day bench trial on the petitioners' affirmative defense of release.  The issue tried was the effect of the release language contained in the amended 2l-AMH agreement and Olsen's claims regarding asset transfers between January 1, 2013 and September 1, 2014.

It was undisputed that in 2013, when Olsen and Fratangelo decided to seek financing in the amount of $10 million, and because Olsen had outstanding IRS tax liens of approximately $1.5 million, which would have precluded obtaining the financing, Olsen agreed to be removed from the company.  21-AMH's counsel prepared the necessary documents, including an assignment of Olsen's membership interest and a purchase agreement for the sale of Olsen's interest in 21-AMH to Fratangelo.  Olsen acknowledged that he signed the assignment of his membership interest transferring his membership interest to Fratangelo as of January 1, 2013.

Between January 1, 2013 and August 2014, Olsen continued to work with Fratangelo as an asset manager.  Olsen testified that during that time he

participated in management and decision making regarding 21-AMH, he had access to the database of all 21-AMH's assets, and he was intimately involved in the daily operations of the company. However, in August 2014, when Olsen came back from vacation, he discovered that Fratangelo had vacated the premises with the employees and the company's records and files. As a result, the parties' longtime transactional attorney, who took a neutral position regarding Olsen and Fratangelo because she had represented them both over the years, drafted the 2014 agreements. These documents were signed by Olsen and Fratangelo on October 1, 2014, and made effective September 1, 2014. The signed documents contained a general agreement, an amended purchase and sale agreement, and the release provision previously provided in this opinion, and which was the subject of the bifurcated trial.

At the bifurcated trial, Olsen claimed that between January 2013 and September 2014, Fratangelo transferred assets from 21-AMH to other companies he unilaterally controlled without Olsen's consent or authorization. Fratangelo contended that he had the authority to sell these assets because he was the sole owner of 21-AMH during that time, but more importantly, he contended that any transfers from 21-AMH between January 21, 2013 and September 1, 2014 were not subject to Olsen's claims because Olsen signed the release releasing Fratangelo from any claims regarding these assets.

Judge Bailey issued a partial final judgment following the bifurcated trial,

17

finding for Fratangelo on his affirmative defense of release on September 6, 2016. Specifically, Judge Bailey found that the amended 21-AMH agreement and the release language in paragraph 4.3.1 were clear and unambiguous, and that pursuant to the release, Olsen specifically released Fratangelo and "the Company" from all actions and against all sums of money and accounts "known or unknown, whether or not concealed or hidden."

Judge Bailey noted that "[t]here is no warranty with regard to the assets here. . . . The parties agreed to accept asset distribution free and clear of any issues with regard to each other, the company as well as their respective assets." Judge Bailey additionally noted that during that time Olsen and Fratangelo were adversaries; it was undisputed that Olsen had sufficient documents under his own control to double-check that each of the assets had been accounted for; and he should have performed due diligence before he signed the agreement which contained an extremely broad release. Thus, Judge Bailey concluded that although Olsen may now regret signing the release, he signed as a sophisticated business person, the release is valid and binding, Fratangelo is not liable to Olsen for claims arising from 21-AMH's asset transfers between January 1, 2013 and September 1, 2014, and thus Olsen is only entitled to 50% of the net market value of the missing assets owned by 21-AMH on September 1, 2014.

D. **The potential missing assets**

Following the issuance of Judge Bailey's partial final judgment granting

Fratangelo's affirmative defense of release, the parties prepared a Joint Missing Asset List, which listed 525 potential missing assets. On February 16, 2017, the trial court granted partial summary judgment in favor of the petitioners, concluding that 460 of the 525 potential missing assets were missing assets that had been sold and for which Olsen had been paid.

On March 16, 2017, the trial court granted partial summary judgment in favor of the petitioners regarding an additional thirty-two of the potential missing assets, concluding that they were not missing assets. On November 16, 2018, the trial court granted partial final judgment in favor of the petitioners regarding an additional twelve assets, thus leaving only approximately twenty-six potential missing assets to be tried.

### E. **The trial court's pre-trial rulings**

In November and December 2017, the successor judge, Judge William Thomas ("the successor judge"), conducted an eight-day bench trial regarding the remaining potential missing assets. Prior to trial, the successor judge:

(1) granted the petitioners' motion in limine to preclude Olsen from submitting any evidence contrary to the partial final judgment issued by Judge Bailey on September 6, 2016; and

(2) denied Olsen's motion to bifurcate the trial on issues of liability and damages.

**The Trial**

**A.** **The trial court failed to honor its pre-trial rulings and other prior judgments rendered during the litigation**

Based on the successor judge's pre-trial rulings, the petitioners proceeded to trial on the remaining twenty-six potential missing assets expecting that the trial court would honor its rulings. Thus, based on the successor judge's pre-trial rulings, no evidence should have been introduced concerning: (1) any unpled partnership; (2) any assets other than the remaining twenty-six potential missing assets; or (3) the transfer or disposition of any assets between January 1, 2013 and September 1, 2014, and Olsen was required to prove all of his remaining claims at the bench trial, not have a second bite of the apple following the trial.

The record, however, reflects that the successor judge failed to honor his pre-trial rulings and allowed Olsen to try, over strenuous objection by the petitioners, his unpled claim of partnership; allowed Olsen to introduce evidence in support of Olsen's claim that he had an ownership interest in 21-AMH after January 1, 2013; sua sponte reversed his prior summary judgment order regarding seven assets and allowed Olsen to introduce evidence regarding these assets; retried the issue of the release contained in the amended 21-AMH agreement; and concluded that the disposition of assets prior to September 1, 2104 were subject to Olsen's claims.

The successor judge then concluded that Olsen and Fratangelo were partners in a joint venture, despite: Judge Bailey's **dismissal** of Olsen's joint venture claim without prejudice; Olsen not amending

his complaint to plead either a joint venture or a partnership; and Fratangelo's objections to defending against an unpled claim with no notice. Also without notice, in direct violation of his own pre-trial ruling, and in contravention of Judge Bailey's order granting summary judgment in favor of the petitioners on their defense of release, the successor judge: found that Olsen did not release the petitioners from claims arising out of asset transfers prior to September 1, 2014; allowed Olsen to present evidence and make argument regarding the disposition of assets prior to September 1, 2014; concluded that Fratangelo's unauthorized transfers of assets was not protected by the release provisions contained in the amended 21-AMH agreement; and the petitioners were liable to Olsen for these assets.

## B. <u>The trial court departed from the essential requirements of law</u>

A denial of due process is a per se departure from the essential requirements of law requiring certiorari relief. <u>Haines City Cmty. Dev. v. Heggs</u>, 658 So. 2d 523, 527 (Fla. 1995) ("Failure to observe the essential requirements of law means failure to accord due process of law within the contemplation of the Constitution, or the commission of an error so fundamental in character as to fatally infect the judgment and render it void") (quoting <u>State v. Smith</u>, 118 So. 2d 792, 795 (Fla. 1st DCA 1960)).

There is nothing more fundamental than the right to notice and a meaningful opportunity to be heard. "Procedural due process serves as a vehicle to ensure fair

treatment through the proper administration of justice where substantive rights are at issue, and requires fair notice and a real opportunity to be heard at a meaningful time and in a meaningful manner." Crosby v. Fla. Parole Comm'n, 975 So. 2d 1222, 1223 (Fla. 1st DCA 2008); see also Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950) (holding that the notice required to satisfy due process must reasonably convey the required information, apprise interested parties of the pendency of the action, and afford them a meaningful opportunity to present their objections); Keys Citizens for Responsible Gov't, Inc. v. Fla. Keys Aqueduct Auth., 795 So. 2d 940, 948 (Fla. 2001) ("Procedural due process requires both fair notice and a real opportunity to be heard.").

(1)  The petitioners were denied procedural due process when they were forced to defend against an unpled claim at trial

The petitioners were denied procedural due process where, without notice, the trial court permitted Olsen to present evidence on a claim dismissed by the predecessor judge, and then awarded relief on Olsen's unpled claim. As this Court has repeatedly held, it is error to allow a plaintiff to proceed on an unpled claim and for the trial court to assess liability on the unpled claim. See Sunbeam Television Corp. v. Mitzel, 83 So. 3d 865, 875 (Fla. 3d DCA 2012); see also Agrofollajes, S.A. v. E.I. DuPont De Nemours & Co., 48 So. 3d 976, 995 (Fla. 3d DCA 2010) (disapproved on other grounds) (holding that "when a plaintiff pleads one claim but tries to prove another, it is error for a trial court to allow the plaintiffs to argue the unpled issue at

trial); Michael H. Bloom, P.A. v. Dorta-Duque, 743 So. 2d 1202, 1203 (Fla. 3d DCA 1999) ("It is well settled that a defendant cannot be found liable under a theory that was not specifically pled.").

It is also well-settled law that a trial court lacks jurisdiction to enter judgment on an issue not raised by the pleadings.  See Bank of Am., N.A. v. Nash, 200 So. 3d 131, 135 (Fla. 5th DCA 2016) (holding that judgment granting relief outside the pleadings is void); Cunha v. Mann, 183 So. 3d 1113, 1115 (Fla. 3d DCA 2015) (holding that judgment granting relief outside the pleadings is voidable on appeal); Wachovia v. Mortg. Corp. v. Posti, 166 So. 3d 944, 945 (Fla. 4th DCA 2015); Paulk v. Paulk, 25 So. 3d 672, 674 (Fla. 2d DCA 2010) (holding that the trial court lacks jurisdiction to enter judgment outside the pleadings).

Olsen had pled that the relationship between the parties was one of a joint venture.  Judge Bailey dismissed the joint venture count; Olsen did not replead the existence of a joint venture, thereby abandoning the claim; and Olsen failed to plead the existence of a partnership.  The governing documents also clearly reflect that Fratangelo and Olsen chose to operate as members of limited liability companies, not as partners.  A partnership is a "residual form of . . . business association, existing only if another form does not."  § 620.8202(2), Fla. Stat. Uniform Cmt. 2.; Houri v. Boaziz, 196 So. 3d 383, 389-90 (Fla. 3d DCA 2016) (finding that it was error to disregard the limited liability company as joint ventures); Marriott Int'l, Inc. v. Am. Bridge Bahamas, Ltd., 193 So. 3d 902, 910

23

(Fla. 3d DCA 2015) ("As a matter of law, a corporation is not a joint venture") (Scales, J., concurring).

> (2) The petitioners were denied procedural due process when they were forced to defend at trial claims decided in their favor prior to trial

Summary judgment was granted in favor of the petitioners regarding their affirmative defense of release. Summary judgment was also granted in their favor on the majority of the assets Olsen claimed were missing assets, for which he was entitled to receive his 50% interest. Additionally, just prior to trial, the petitioners filed, and the successor judge granted, a motion in limine to preclude Olsen from submitting any evidence contrary to the partial final judgment issued by Judge Bailey on September 6, 2016 (wherein Judge Bailey found for the petitioners on their defense of release). Thus, the petitioners expected that the trial would be limited to a determination of whether any of the remaining listed twenty-six potential missing assets were, in fact, missing assets subject to partial disbursement to Olsen.

The successor judge, however, with no notice to the petitioners, and over repeated objections by the petitioners, permitted Olsen to relitigate the effect of the very broad release he signed and to present evidence regarding assets he claimed were missing assets and which were not in the remaining twenty-six identified assets the petitioners were prepared to address at trial. Although we recognize that a trial court has the inherent authority to revisit an earlier ruling either it has made or a predecessor judge has made, it

24

must provide notice and a meaningful opportunity to the party or parties to prepare for and to defend its position. See Wright v. Wright, 654 So. 2d 674, 674 (Fla. 5th DCA 1995) ("While a trial court may modify [an interlocutory order], elementary notions of procedural due process which include notice and a meaningful opportunity to be heard apply . . . .").

The successor judge's mid-trial revisiting of issues resolved prior to trial, without notice, without allowing the petitioners a meaningful opportunity to prepare for, and over the petitioners' repeated objections was a clear departure from the essential requirements of law and from one of the most basic and fundamental protections to be afforded every litigant.

(3) The petitioners were denied procedural due process, when, after denying pretrial Olsen's motion to bifurcate liability and damages, the trial court reversed its position after trial

Prior to trial, Olsen moved to bifurcate the issues of liability and damages. The trial court denied Olsen's motion to bifurcate liability and damages and declared that all remaining issues would be tried during the trial. Olsen proceeded to trial on his claims, wherein he sought damages on revenue from the missing assets earned prior to the sale of those assets, and damages arising from the approximately twenty-six remaining missing assets that the trial court determined would be tried. Olsen failed to present any competent evidence regarding damages relating to his claimed damages on the revenue earned by the missing assets or to prove that any of the remaining twenty-six potential missing assets were missing

assets. Thus, Olsen failed to prove his damages, and the trial court found no damages for either category.

However, instead of entering judgment in favor of the petitioners, the trial court concluded that Olsen was entitled to an equitable accounting in order to prove his damages. This too was a departure from the essential requirements of law. See Cleveland v. Crown Fin., LLC, 212 So. 3d 1065, 1069 (Fla. 1st DCA 2017) (holding that "courts generally do not provide parties with an opportunity to retry their case upon a failure of proof"); Correa v. U.S. Bank, Nat'l Ass'n, 118 So. 3d 952, 956 (Fla. 2d DCA 2013) (noting that counsel should have been aware of its burden and citing to cases refusing to give a party a second bite of the apple); Allard v. Al-Nayem Int'l, Inc., 59 So. 3d 198, 202 (Fla. 2d DCA 2011) (stating that a party's failure to prove damages is an improper ground for rehearing).

Equitable accounting is a remedy, not a mechanism to provide a plaintiff, who failed to prove his damages at trial, with another opportunity to do so post trial. The law is also well settled that a court cannot exercise its equitable powers where an express contract exists and where the plaintiff has an adequate remedy at law. Ocean Commc'ns, Inc. v. Bubeck, 956 So. 2d 1222, 1225 (Fla. 4th DCA 2007) ("Defendants correctly state that a plaintiff cannot pursue an equitable theory . . . if an express contract exists."); Lake Tippecanoe Owners Ass'n v. Nat'l Lake Devs., Inc., 390 So. 2d 185, 187 (Fla. 2d DCA 1980) (holding that a court cannot exercise equitable powers when a plaintiff has an adequate remedy at law);

26

Rosen v. Rosen, 167 So. 2d 70, 72 (Fla. 3d DCA 1964) (holding that jurisdiction to impose equitable remedies assumes that no adequate remedy exists at law).

The trial appeared to recognize this well-established legal concept, but then it failed to apply it to Olsen's equitable accounting claim. When addressing Olsen's unjust enrichment claim, the trial court correctly concluded that Olsen was not entitled to relief because he was entitled to relief pursuant to the contract (agreements). However, when addressing Olsen's equitable accounting claim, the trial court concluded that because the underlying transactions were complex, Olsen's ability to prove his contractual damages was insufficient. See Bankers Tr. Realty, Inc. v. Kluger, 672 So. 2d 897, 898 (Fla. 3d DCA 1996) (concluding that a plaintiff may obtain an equitable accounting if he demonstrates that the contract demands involve extensive or complicated accounts **and** it is clear that the remedy at law is inadequate).

Olsen, however, failed to establish either of these two requirements: complexity or an inadequate remedy at law. He offered no evidence regarding complexity and both agreements contain a straight forward formula for payment of the missing assets. He is entitled to one-half of the net market value of the missing 21-AMH assets, and one-third of the net market value of the missing AR23 assets. And, the parties created a list of these assets prior to trial. The number of transactions does not make them complex nor establish a need for an equitable accounting. Managed Care Sols., Inc. v. Essent Healthcare, Inc., 694 F. Supp. 2d

1275, 1280 (S.D. Fla. 2010) (concluding that the fact that the aggregation of thousands of receivables might be required did not make calculation of damages unduly complex).

Olsen was also provided with a full opportunity to conduct discovery, and as Judge Bailey found in the partial final judgment she issued on September 6, 2016:

> Olsen had sufficient source documents under his own control to double-check that each and every asset in 21AMH throughout the history of the LLC had been accounted for. Olsen simply failed to do his due diligence . . . .  The asset listing process began in spring 2014 at a time when Olsen had full access to all the records, and Olsen never lost access to the underlying source spread sheets.

The successor judge thus departed from the essential requirements of law by permitting Olsen to pursue his equitable accounting claim post trial after he failed to prove his damages under the express written agreements.

## C. **The majority opinion**

The majority opinion's answer to the identified due process violations is its argument that a successor judge has the power to vacate or modify a predecessor judge's interlocutory rulings.  While that statement is true, a successor judge does not have the authority to enter a judgment on an issue not raised in the pleadings, see Nash, 200 So. 3d at 135; Cunha, 183 So. 3d at 1115; Posti, 166 So. 3d at 945; Sunbeam; 83 So. 3d at 875, Agrofollajes; 48 So. 3d at 995; Paulk, 25 So. 3d at 674; Bloom, 743 So. 2d at 1203.

Due process also mandates that if a successor judge wishes to revisit a prior ruling either by a predecessor judge or

by itself, he or she must provide notice and a meaningful opportunity to the party or parties to defend the earlier ruling. Wright, 654 So. 2d at 674. The trial court in the instant case violated all of these well-settled principles and denied Fratangelo his right to even the most rudimentary protections of procedural due process.

**D. The petitioners have established irreparable harm that cannot be adequately remedied on appeal**

Based on the successor judge's rulings, Olsen must be given access to Fratangelo's confidential and personal financial records from the beginning of their relationship to the present. Because Judge Bailey dismissed Olsen's joint venture claim, and Olsen did not amend his pleadings to pursue the existence of either a joint venture or a partnership, Olsen was not entitled to delve into Fratangelo's personal financial records. However, the successor judge has now reversed the partial final judgment issued by Judge Bailey, without providing notice to Fratangelo or affording him with a meaningful opportunity to defend himself against Olsen's claims; concluded that the parties were partners; and has concluded that the amended 21-AMH agreement did not release Fratangelo or 21-AMH from claims Olsen may have had regarding assets and asset transfers from January 1, 2013 through September 1, 2014. Thus, Olsen is now entitled to access to Fratangelo's confidential financial records, which he did not previously have access to.

In Mana v. Cho, 147 So. 3d 1098, 1098-99 (Fla. 3d DCA 2014), this Court granted Mana's petition for certiorari

29

relief and quashed the portion of the trial court's order requiring Mana to produce his personal financial information. This Court concluded that we had jurisdiction because permitting the discovery constituted a departure from the essential requirements of law "and the discovery of confidential financial information is the type of 'cat out of the bag' discovery that can cause material injury that cannot be adequately redressed on appeal." Id. at 1100; see also Diaz-Verson v. Walbridge Aldinger Co., 54 So. 3d 1007, 1011 (Fla. 2d DCA 2010) (granting certiorari and quashing the trial court's order denying petitioner's motion for a protective order, concluding that petitioner's personal financial information was not relevant to the **issues raised in the pleadings** and disclosure of personal financial information would result in irreparable harm).

Similarly, Olsen failed to plead partnership, the issue of the parties' relationship was definitively tried and determined by Judge Bailey, and the issue was not tried by consent. Thus, the disclosure of Fratangelo's personal financial information is not relevant to any issue raised in the pleadings, and disclosure is the type of "cat out of the bag" discovery that will result in irreparable harm.

Fratangelo had also asserted and submitted proof of actual on-going harm based on the trial court's rulings flowing from the issues improperly tried with no notice to Fratangelo. For example, Fratangelo submitted proof that, based on the trial court's April 20, 2018 order, a company with which Fratangelo has had a long-standing and significant business relationship has instructed its employees to

not engage with Fratangelo in any way, and prospective principals with whom Fratangelo had been negotiating with regarding the start of a new business are now demonstrating a reluctance to include Fratangelo as a member of any new company. Fratangelo's employees have received and are continuing to receive threatening emails, warning them that their continued relationship with Fratangelo will harm them, and prospective lenders have notified Fratangelo that they are aware of the trial court's findings in its April 20, 2018 order and these findings are negatively impacting their ability to do business with him.

In Zimmerman v. D.C.A. at Welleby, Inc., 505 So. 2d 1371, 1373 (Fla. 4th DCA 1987), the Fourth District Court of Appeal concluded that the loss of potential sales constituted irreparable harm because of the difficulty in determining how many sales were lost and what the profit would have been on each lost sale. Thus, the Fourth District found that because the damages would be speculative and unascertainable, the remedy at law would be inadequate and the harm irreparable. Id.; see also K.G. v. Fla. Dep't of Children & Families, 66 So. 3d 366, 368 (Fla. 1st DCA 2011) ("A petitioner can show irreparable harm by demonstrating either that the injury cannot be redressed in a court of law or that there is no adequate legal remedy."); City of Oviedo v. Alafaya Utils., Inc., 704 So. 2d 206, 207 (Fla. 5th DCA 1998) (affirming temporary injunction based on the incalculable loss that would occur if the injunction was not granted).

Here too, the loss and harm to Fratangelo will be difficult to measure and

prove. Thus, his damages will be speculative and unascertainable, his remedy at law will be inadequate, and he will suffer irreparable harm. Because Fratangelo was denied procedural due process, the trial court's findings cannot stand. Failure to grant his petition, requiring him to open his books and accounts and disclose personal financial information, and allowing his business relationships to continue to deteriorate, will result in irreparable harm that cannot be remedied on direct appeal. Thus, Fratangelo's petition should be granted.

## Conclusion

The petitioners have demonstrated both a clear departure from the essential requirements of law and irreparable harm that cannot be remedied on appeal. There is nothing more fundamental than the right to notice and a meaningful opportunity to be heard. Fratangelo was denied that fundamental right when the successor judge re-tried issues previously tried and resolved in Fratangelo's favor and also tried unpled issues, all without notice to Fratangelo and over Fratangelo's objection. The harm: granting Olsen access to Fratangelo's business and personal financial information, and allowing the trial court's findings (based on the improperly tried issues) to stand until resolution of the entire case, is incapable of measurement and thus constitutes irreparable harm that cannot be remedied on appeal. I, therefore, dissent from the majority's dismissal of the petition.